# NATIONAL CASH REGISTER CO. v. BERTIE E. LEACH.

Eastern Section.   July 24, 1926.

Certiorari denied by Supreme Court, November 20, 1926.

1. **Negligence.   Driver who does not have his car under control is guilty of negligence.**
   In an action to recover for personal injuries sustained by being struck by an automobile where the evidence showed that the driver was going at a rate of speed which prohibited him stopping his car within a distance in which a much larger car was stopped, held that the driver was guilty of negligence.

2. **Negligence.   Wet streets held not to excuse driver's negligence.**
   A driver driving on wet and slippery streets must know that his car cannot be stopped as readily as on dry streets and must operate his car accordingly, and if he operates it so that it is out of his control he is guilty of negligence.

3. **Negligence.   It is not an act of negligence to cross a wide street on which automobiles are passing to and fro at rapid rates of speed.**
   The fact that a person attempts to cross a street, even though a wide one, and one in which automobiles are passing to and fro at rapid rates of speed, is not per se an act of negligence barring one's right of recovery for injury.

4. **Principal and agent.   Employer is liable for the acts of his agent but not for acts of an independent contractor.**
   An employer is liable for any acts of negligence on the part of his agent but is not liable for acts of a person who is not under his control or direction.

5. **Contracts.   The construction of a contract when the evidence is undisputed is a question of law for the determination of the court.**
   In an action to recover damages for personal injuries where the question arose as to whether the driver of the automobile was an agent of the defendant or an independent contractor and the evidence of the duties of the driver was undisputed, held the question of agency was for the determination of the court and the question could not be submitted to the jury.

6. **Principal and agent.   Fact that agent personally owns car does not relieve principal of liability for agent's negligent driving.**
   In an action to recover damages for personal injuries sustained by being struck by a car, held that the fact that the sales agent owned the car would make no difference if at the time it was being operated by the agent of the principal while engaged in the principal's business.

7. **Principal and agent.   Agent and independent contractor distinguished.**
   The real test of the relationship of principal and agent and that of independent contractor is, does the employer exercise a right of control over the employee in the performance of the work, and not as to the result of the completed work.

8. **Principal and agent.   Evidence.   Evidence held to show the relationship of principal and agent.**
   In an action to recover damages for personal injuries caused by being struck by an automobile, where the evidence showed that the driver of the

car was working under contract with another individual who was under contract with the defendant, but that 'the driver signed contracts and collected money in the name of the company and all of his acts were governed by the company, rather than by his employer, held to show such an agency as to make the defendant liable for the negligent acts of the driver.

Appeal in Error from Circuit Court of Knox County; Hon. A. C. Grimm, Judge.

Affirmed.

Anderson & Word, of Knoxville, for plaintiff in error.

Atchley & Bibb, of Knoxville, for defendant in error.

PORTRUM, J.    The defendant in error, Bertie E. Leach, was run down by an automobile, while attempting to cross North Broadway in the city of Knoxville, by a car bearing the advertisement or name of the National Cash Register Company on its side, and used to transport cash registers by salesmen.    The car was being driven by a salesman and the principal question involved in this lawsuit is, was the salesman an agent or servant of the company, which would render the company liable for his negligent operation of the car, or was he a so-called independent contractor?    On the trial in the lower court the plaintiff obtained a judgment, and the defendant entered a motion for a new trial and has appealed.

The assignments of error are six in number, but only present two questions, which will be dealt with without restating the assignments. .

The first is, that the conduct of the plaintiff below was so negligent as to defeat her right of recovery.

We do not think the conduct of Miss Leach amounted to gross negligence barring her right to recover.    At the place of the accident the street is broad, and Miss Leach was standing at or near an intersection waiting for a street car to board in order to get up town, and while standing there a friend drove down the right hand or opposite side of the street in an automobile and, seeing Miss Leach, brought the car to a stop and motioned to her to come across and enter, in order to take her to town in the automobile.    She started across the street to enter the car, and a large automobile was approaching her, which was followed by the Ford car driven by the salesman, and which was about one hundred feet away from her.    She had gotten in the middle of the street when she discovered these cars approaching her, and she hastened her pace and cleared the big car, which in fact was under the control of the driver and would not have struck her.    She then for an instant slacked up, but seeing the other approaching car again quickened her pace, but was unable to clear the car, which struck her and dragged her some distance.    The driver states that the road was slick, due to a

recent rain and he was unable to bring the car under control by an application of the brakes, which he applied, when the car skidded and struck her. He testifies that he was travelling approximately twenty miles an hour at the time. An ordinance of the city of Knoxville prohibits the operation of a car across intersections at a higher rate of speed than seven and one half miles per hour.

The person who was operating the larger car brought his car under control within a shorter distance, and the fact that the streets were wet was no excuse relieving the salesman from his duty to keep his car under control at all times. The wet street alone was not responsible, and contributed only to his inability to control his car, when taken in conjunction with the high rate of speed at which he was operating it. The fact that a person attempts to cross a street, even though a wide one, and one in which automobiles are passing to and fro at rapid rates of speed, is not per se an act of negligence barring one's right to recovery for injury. If this were the law, then it would be impossible for the pedestrians to cross many of the suburban boulevards. As a matter of fact the pedestrian may take his life in his hands when he attempts to cross, but the attempt is not in law an act of negligence.

It is insisted that Mr. Akridge was not the agent or servant of the National Cash Register Company, and that the car which he was driving was the personal property of his employer, who was not the agent of the defendant company; and if this be true then the defendant company is not liable to the plaintiff for the acts of a person who is not under its control or direction, that is not its servant or agent. Mr. Akridge's deposition was taken by the defendant, but was read by the plaintiff. He states in that deposition that he was the agent of the defendant company, and that his duties were to sell, deliver, take up and collect for National Cash registers; that he was engaged in these duties at the time of the accident and was operating a car upon which he carried registers in the back, and which bore the name printed on the sides, "National Cash Register Co"; that the car belonged to and was the property of his immediate employer, Mr. C. H. Milton, who is termed Sales Agent for the National Cash Register Company, Knoxville, and the car was registered in his name.

He was introduced as a witness upon the trial and introduced a written contract of employment between him and the said C. H. Milton, and also a written contract of employment between C. H. Milton and the National Cash Register Company, and by this evidence an attempt is made to establish the fact that Milton was not the agent or servant of the company, but was acting independently of it and had the status in law of an independent contractor, or

that the contract did not establish the relationship of servant or agent.

The contracts, in view of the undisputed testimony of the duties of the agent Akridge, present a question of law for the determination of the court, and the complaint that the trial judge should have submitted to the jury the question of this relationship is not well made.

The provisions of the contract between the company and Mr. Milton provide, among other things, as follows:

"(1) Said sales agent agrees to devote his whole time and best endeavor to the business of the company in said territory. He also agrees to employ such salesmen to assist him, and upon such terms and conditions as the Company may require.

"(2) Said sales agent, during his continuance in said agency under this contract, shall receive a commission on all moneys received from the sale of cash registers and other products sold for the Company for use in said agent's territory, whether sold by him or by the Company, or others.

"(3) This agreement shall apply to business procured at the time of the Company salesman's visit, and also to all business subsequently procured either by said sales agent, the Company salesman, or other Company representatives.

"(4) All orders for cash registers shall be taken upon the printed forms furnished by the Company; and all such orders shall be sent to the Company immediately after being signed by the purchasers, and such orders shall embody all the conditions and agreements of every matter whatsoever, it being understood and agreed that the Company shall not be responsible for promises or conditions not specified on such orders.

"(5) No orders taken shall be binding upon the Company until accepted by it.

"(6) Said sales agent agrees that the Company shall have full control of, and discretion as to the collection, adjustment or compromise of any or all accounts.

"(7) Said sales agent agrees to make daily remittances to the Company, in the manner prescribed by its treasurer, of all cash received by him for the Company, including the money received for repair parts or supplies sold, and that in no event will he use any money collected for the Company to defray the expenses of his agency, or for any other purpose, or dispose of the same in any bank to his credit; that all checks and drafts made payable to the Company shall be forwarded directly to it, the same day they are received, unless otherwise instructed, and if, inadvertently, a check or draft or an amount owing to the Company is made payable to said sales agent,

unless otherwise instructed, he will endorse and forward it to the Company the day it is received.

"(8) The Company shall insure against loss by fire all registers on consignment, all office furniture and fixtures, and all supplies and repair parts, charging the premium paid to said sales agent's account."

Now referring to the contract between Mr. Milton, the sales agent and the salesman, Mr. Akridge, it contains, among others, the following provisions:

"(1) To be governed by the decisions of said Company (National Cash Register Company).

"(2) All orders taken by him are to be subject to the approval and acceptance by said National Cash Register Company.

"(3) All orders for cash registers shall be taken on printed forms furnished me by said Company (National Cash Register Company).

"(4) No registers or supplies are to be sold for more or less than the list price established by the Company, plus freight or express. If said Company is obliged to make any concessions to customers, or any expense is incurred by the violation of the requirements, the amount thereof may be charged by me to your account.

"(5) He agrees to collect promptly and turn over to the collection department of his office, at once, all notes or accounts which may be placed in his hands for collection, whether the sale is made by him or not.

"(6) He agrees to make daily remittances to C. H. Milton, sales agent for the National Cash Register Company, of all cash received for said Milton, or the National Cash Register Company, including the money received for supplies sold, and repairs made, in the manner prescribed by me, and in no event shall you use any sum of money collected for me or said company to defray your expenses, or for any other purpose.

"(7) He agrees to pay all his expenses, and under no circumstances is he to represent the National Cash Register Company, or me, as being responsible for same.

"(8) He agrees while operating his territory outside of his headquarters town, to carry with him on the road, a full line of regular samples required by the Company's decisions.

"(9) He agrees to furnish said Company and me with a fidelity bond in the sum of one thousand dollars, to be issued by a responsible surety company, and conditioned on the faithful performance of his duties and to indemnify said Company

and me from loss by reason of any wrongful act or acts on his part in the position created by this contract.

"(10)   For any breakage or damage done to Milton's property, or the property of the National Cash Register Company while in his charge, he is to be held responsible, and all losses sustained by such breakage or damage shall be paid by him.

"(11)   He agrees to keep a list of probable purchasers, and also a list of users of National Cash Registers in his territory. Both lists to show the name, business and address of the merchant, and the user's list to show also the style and factory number of each register in use. He agrees to keep both of these lists up to date by revising and adding to same from information to be secured by his daily work in his territory. These lists shall be and remain the property of the National Cash Register Company, and shall be delivered by him at any time to an authorized representative of said Company on demand, or at the termination of his contract."

The fact that the sales agent owned the car would make no difference if at the time it was being operated by the agent of the company while engaged in the company's business. Core v. Resha, 140 Tenn., 428. The real test of the relationship of principal and agent and that of independent contractor is, does the employer exercise a right of control over the employee in the performance of the work, and not as to the result of the completed work? Siskin v. Johnson, 151 Tenn., 93; Powell v. Construction Co., 83 Tenn., 691; Davis v. Lumber Co., 126 Tenn., 576.

"The liability of an employer for the acts and contracts of one employed to work for his interest often turns on the distinction between agent or servant on the one hand and independent contractor on the other. For the acts of the agent or servant within the scope of his employment the employer is generally liable; for the acts of the independent contractor in general he is not. In so far as the employer retains the right of general control and management of the work, he makes the employee his agent or servant; but in so far as the employer leaves the choice of means and methods to the employee, he makes him an independent contractor. The independent contractor, like the agent, undertakes to accomplish a certain end. In the work to be done and the means to be adopted to attain the end he is, even more than the agent, free from the control and direction of the employer. As a rule his acts are his own, his contracts are his own, and for them he, not the employer, is responsible. So far as the employer is concerned, the independent contractor, like the servant, deals with things; but, unlike the agent, he deals with persons and

makes contracts on his own account. One may be an agent and not an independent contractor, although he is paid according to the amount of work accomplished; and on the other hand one may not be an agent, although he is advanced money to make purchases for his alleged principal." C. J., Vol. 2, page 424.

"Atlas Lumber Co. v. Schenck, 2 Colo. A., 246, 29 P., 1137— where it was said that, while the independent contractor, like the agent, enters into contractual relations with third parties, it is entirely on his own account; he is not like the agent, authorized to make any contracts for the employer, or in his name; if he does this, and in so far as he does, he becomes an agent—Johnson v. Dahlgren, 48 App. Div., 537, 62 N. Y. S., 1115."

We are of opinion that the relationship created by the contracts and the manner of performing the duties established the relationship of principal and agent. The sales contract made with the customers certainly were made in the name of the company, and bound the company, and the purchase price belonged to the company. The company exercised the right of absolute control over the acts and business relationships of the parties, which appears from a reference to the terms of the contracts above quoted.

The circuit judge was not in error in construing the contracts as creating the relationship of principal and agent. The case is affirmed, and the plaintiff in error and his sureties on his appeal bond are taxed with the costs of the appeal.

Snodgrass and Thompson, JJ., concur.