CITY OF KNOXVILLE v. HORNE.—120 S. W. (2d) 964.

Eastern Section.   May 20, 1938.

Petition for Certiorari denied by Supreme Court, October 22, 1938.

S. E. Hodges and Wayne Parkey, both of Knoxville, for plaintiff in error.
Grimm & Tapp, of Knoxville, for defendant in error.

McAMIS, J.   Ben H. Horne, plaintiff below, sustained personal injuries when he drove his car into the supporting pier in what is known as the Fifth Avenue Underpass in the City of Knoxville where Fifth Avenue passes under the main line of the Southern Railway Company.   He was injured on March 28, 1936 at about 6 o'clock A. M. while traveling westwardly on Fifth Avenue on his way to work.   On February 23, 1937 he instituted this action against the City of Knoxville, by the declaration alleging that the proximate cause of his injuries was (1) the creation and maintenance by the defendant of a nuisance in exposing the traveling public to the dangers, perils and hazards incident to travel through said underpass under the conditions described in the declaration, and (2) in constructing and maintaining said pier in a dip under

the railroad on a curve where the fog collects, without maintaining any warning of the danger to which the traveling public was thus exposed, all of which the defendant, City of Knoxville, knew, or could have known by the exercise of ordinary care and diligence.

At the conclusion of all the evidence, plaintiff, Horne, took a voluntary non-suit as to that count of the declaration charging the creation and maintenance of a nuisance. The case was tried to a jury and, at the conclusion of all the evidence, the City moved the court for a directed verdict in its behalf, basing its motion mainly upon plaintiff's contributory negligence and assumption of risk in driving his car into a dense fog and against the pier, the nature and location of which he had observed daily for a period of approximately thirteen years. This motion was overruled and the case submitted to the jury with the result that it returned a verdict for $1,500 which was approved by the trial court and, its motion for a new trial being overruled, the City of Knoxville has appealed in error to this court. The errors assigned relate in the main to the issue of contributory negligence and assumption of risk.

Plaintiff testified that he had lived on East Fifth Avenue, at a point several blocks east of the underpass, for a period of approximately sixteen years; that he had passed under the underpass daily in going to and from his work in the city ever since its completion in the year 1924; that on the morning of March 28, 1936 he left home en route to his work between 5:30 and 6 o'clock A. M.; that it was foggy when he left and that he encountered a "rolling" fog as he proceeded westwardly toward the underpass; that the underpass is in a dip in the street and that the fog was so dense at that point that he could not see; that the pier was gray in color and could not be seen in the fog; that, for this reason, he began looking for the overhead light in the ceiling of the underpass and when he looked up he saw the cross-ties on the railroad, they being discernible because of their dark color; that he was then only about five feet away from the entrance to the underpass and that this is the last thing he remembers until he regained consciousness in the hospital.

The proof shows that on March 28th the sun rose at 5:28 A. M. and that the street lights of the city were cut off automatically twenty minutes before sunrise and cut on twenty minutes after sunset each day, the time depending upon the season of the year. Plaintiff testified there was no light burning in the underpass and this is doubtless correct for the reason that the lights had been cut off before sunrise. The Superintendent of the United States Weather Bureau at Knoxville reported a light fog prevailing over the city until about 9 A. M. It would appear

from these facts that the poor visibility under which plaintiff was operating his car resulted from fog rather than darkness.

Plaintiff testified that he was driving only about ten miles per hour as he approached the underpass. Two witnesses for the city estimated his speed at twenty-five miles per hour but plaintiff has persuaded the jury to believe his testimony and we must accept it as true. He testified that going at ten miles per hour he could bring his car to a stop in a distance of twenty to twenty-five feet. According to his testimony when he entered the bank of fog in the dip at the underpass, it was so dense that he could not see anything in front of him but when he looked up he saw the cross-ties when he was within five feet of the pier. He does not claim to have reduced his speed so as to be able to bring his car to a stop within the range of his vision but says that he was feeling his way along trying to locate the ceiling light in the underpass.

In so operating his car into a known but obscured obstruction, we think plaintiff was guilty of contributory negligence and assumed the risk of his position. He does not claim to have been in doubt as to his location on the highway and his testimony shows that he knew he was about to enter the underpass but the fog was so dense that he was unable to see the pier. Instead of stopping as common prudence would seem to dictate, or at least slowing down until the pier came within the range of his lights, he abandoned his lookout for obstructions immediately in front of his car and looked up, as he says, for the purpose of locating the light in the ceiling of the underpass. The fact that he looked up for the purpose of locating the light shows that he was fully conscious of his inability to see and avoid striking the pier by the aid of the lights on his car.

While the proof shows that the light in the underpass had been kept burning during the day at times, plaintiff does not claim to have relied upon a known practice and custom on the part of the city to keep the light burning during foggy weather. Moreover, it appears that the light in the ceiling of the underpass was intended to afford light within the underpass and not to indicate the location of the pier.

In any rational consideration of plaintiff's action in continuing to drive his car into a position of known peril, the mind recurs to the proposition that plaintiff knew as much about any hazards incident to passage through this underpass as did the defendant city. He says the pier was gray and not discernible in the fog for that reason. If so, having passed by it daily for thirteen years, he knew it. He insists that the city was negligent in not placing a warning signal on the pier and instructing it in a dip and at the apex of a curve. If so, he knew also of these conditions and should

have taken adequate precautions against being injured. He knew that the pier was obscured by a dense fog through which his vision, by the aid of the lights on his car, could not penetrate. Indeed, there was nothing connected with the underpass or attending atmospheric conditions which he did not know, or, by the exercise of reasonable care and caution, could not have known.

It has become a settled rule in this State that it is negligence in law to operate an automobile at a rate of speed at which it cannot be stopped within the range of the lights. West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301; Knoxville Railway & Light Co. v. Vangilder, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A 1111; Tennessee Central Railway Co. v. Shutt, 2 Tenn. App. 514; Cleveland Transfer Co. v. Clark, 6 Tenn. App. 364. Exceptional circumstances may render the rule inapplicable. Patterson v. Kirkpatrick, 11 Tenn. App. 162; Huntsman Brothers, Inc. v. Grocers Baking Co., 12 Tenn. App. 535; Main St. Transfer & Storage Co. v. Smith, 166 Tenn. 482, 493, 63 S. W. (2d) 665.

In the last of these cases, while adhering to this general rule, it was held that exceptional circumstances will render it inapplicable, as contrary to the practice and experience of persons of ordinary caution and prudence.

However, the exceptional circumstances must be such as to make stopping the car impracticable, as in Huntsman Brothers, Inc. v. Grocers Baking Co., supra, or because the motorist has the right to expect a clear and unobstructed passage and relies upon others to observe the duty of keeping the passage unobstructed, as in Main St. Transfer & Storage Co. v. Smith, supra. Under such circumstances, it would be too arbitrary to say that no person of ordinary prudence and experience would continue to drive, being unable to stop within the range of the lights.

In this case, plaintiff did not expect the passage to be clear and unobstructed and yet continued to operate his car knowing he could not stop within the range of his lights under the prevailing atmospheric conditions. His situation is the reverse of the cases where exceptions to the rule have been recognized. He expected the obstruction and there was no practical reason why he should not bring his car under such control that he could stop it within the range of the vision afforded by the lights.

In Solomon v. Duncan, 1916, 194 Mo. App. 517, 185 S. W. 1141, the court held the plaintiff guilty of contributory negligence as a matter of law where it appeared that he drove his automobile through a fog, which rendered his headlights less effective, so that he could see but ten feet ahead of him, and collided with a pile of debris on the side of the street. Driving a car at a speed making it impossible to stop within the distance at which objects were vis-

ible under the weather conditions was held not to be the exercise of ordinarily prudent care.

In Thompson v. Bellingham, 1920, 112 Wash. 583, 192 P. 952, 19 A. L. R. 864, it was held that plaintiff was unduly imprudent in operating his car in a very thick fog which concealed the highway. Said the court [page 954]:

"If the danger was obvious, it was so only to the appellant [plaintiff], who persisted in proceeding in the face of an unusual natural condition rapidly occurring and completely baffling only within a limited area. Being perfectly familiar with the condition of the locality, now suddenly obscured by a bank of fog, appellant had no right to act on the ordinary presumption that this particular way or place was safe, or that it did not hold out the possibility of his straying through the gap onto the railway trestle."

In McFadden v. Northern P. R. Co., 1930, 157 Wash. 437, 289 P. 1, where a motorist was killed at night by driving into a train in a fog at an unlighted but familiar street crossing, the court said [page 2]:

"It is no doubt true that a traveler upon a public highway, having no knowledge of its condition, other than that which is apparent to him, may use it in the ordinary and usual way in the faith and belief that no obstructions have been placed therein without adequate and sufficient warning of their presence. . . . But this was not the situation presented here. The person injured by colliding with the train was familiar with the highway and its surroundings and conditions. He knew of the presence of the railroad crossing, and knew, or was in duty bound to know, the uses that were made of it. He knew that there were no lights, bells, or warning signals of any kind to indicate the location of the crossing tracks, and knew that the tracks were continuously used. To pass over it when the visibility was such that he could not see a train upon it until he was too close to it to avoid running against it is, in this situation, such contributory negligence as will prevent a recovery."

To the same effect are Toledo Terminal R. Co. v. Hughes, 115 Ohio St. 562, 154 N. E. 916; Fannin v. Minneapolis, St. Paul, etc., R. Co., 1924, 185 Wis. 30, 200 N. W. 651; Lauson v. Fond du Lac, 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30; and Humphrey v. Wayne County, 257 Mich. 398, 241 N. W. 212.

Upon the foregoing authorities and for the reasons indicated, we reach the conclusion that the learned circuit judge was in error in overruling the motion of the City for peremptory instructions made at the conclusion of all the evidence. The motion is now sustained and the suit dismissed. Costs of appeal will be taxed to plaintiff and surety.

Portrum and Ailor, JJ., concur.