### HOPPER
### v.
### UNITED STATES et al. (three cases).

United States District Court,
E. D. Tennessee S. D.
Jan. 28, 1953.

Spears, Reynolds, Moore & Rebman, Chattanooga, Tenn., for plaintiffs.

Moon & Anderson, Chattanooga, Tenn., for defendant Maples.

O. T. Ault, U. S. Atty., Chattanooga, Tenn., for United States.

DARR, Chief Judge.

Three actions have been brought for personal injuries, property damage and death against the United States and Sergeant Clarence H. Maples under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2674, growing out of a collision between an automobile station wagon, in which the plaintiffs and the decedent were riding, and an automobile driven by Sergeant Clarence H. Maples,

a technical sergeant in the United States Air Force.

The accident happened at a point some 6 or 7 miles west of Cleveland, Tennessee, about 7:30 p. m., December 20, 1951, on U. S. Highway 11, the principal thoroughfare leading from the East and Northeast into Chattanooga, Tennessee.

Riding in the plaintiff's Packard station wagon were the members of the Hopper family, consisting of the father, Arthur J. Hopper, Jr., his wife, Mrs. Ruth B. Hopper, and two sons, Arthur J. Hopper, III, aged 18, and Thomas P. Hopper, aged 16. They reside in Norristown, Pennsylvania and at the time were en route to New Orleans, Louisiana to visit relatives.

The plaintiff's station wagon was being driven by Arthur J. Hopper, III, who alternated with his father in driving. On the front seat with him was Mrs. Hopper; and the father and younger son were in the rear of the station wagon, which was arranged for resting and the father was lying down.

At the time of the collision and for some considerable time before, there was a severe rain storm, causing the roadway to be covered with water, and the air was murky. Pockets or pools of water had accumulated at low places in the road.

The station wagon was proceeding at the rate of 25 to 30 miles per hour, on its right hand side of the highway, which was two lanes, with windshield wipers working and bright lights burning at low beam. A number of cars had been met going in the opposite direction immediately before the collision.

The defendant's automobile was the privately owned car of Sergeant Maples. His regular place of residence was Knoxville, Tennessee, but for some considerable period he had resided at Cleveland, Tennessee, where he had been assigned to duty. He was a technical sergeant in charge of the sub-station Cleveland Recruiting Office of the United States Air Force, having charge of recruiting in several counties, wherein were situated the towns of Benton, Copperhill, Charleston, Georgetown, Birchwood, McDonald and Cleveland. He was furnished with a government car for travel in this area, but occasionally used his privately owned car.

He worked under the supervision of the area recruiting office in Chattanooga, the policy of that office being to permit and approve the use of privately owned cars by the area personnel when they desired, whereby the government would be saved the expense of oil and gasoline. The use of his privately owned car was approved in the present instance in accordance with established policy of the Chattanooga office.

On the morning of December 20, 1951, Sergeant Maples drove from Cleveland to Chattanooga on official business, the order for which had been previously issued by his superior officer. The occasion for this trip was attendance at an area conference on recruiting activities, which was to be attended by some 20 or 25 of the sub-station representatives. The business for attention related particularly to changes in procedure in transferring certain operative functions to the Knoxville office.

Inasmuch as Sergeant Maples planned while on the trip to purchase for his wife some articles of clothing at one of the Chattanooga stores, he drove his own car to Chattanooga instead of using the car provided by the government for his official travel.

The official business in the Chattanooga office was not completed until after 6 p. m.; and when Sergeant Maples left the meeting he got his car from the parking lot and drove a short distance into the city to the store at which he had planned to make the purchase. The store was already closed. Consequently he did not stop or get out of the car, but without attending to any personal business, he immediately got on the highway leading back to Cleveland. He had in the car a supply of government recruiting forms and printed matter which he was transporting to his office to be used in the changed pro-

cedure of his official business. The highway over which he started on his return trip to his post of duty at Cleveland was the most direct route for him to travel.

After traveling some 18 to 20 miles toward Cleveland at a speed variously estimated from 40 to 50 miles per hour, as he approached plaintiff's station wagon, his car was caused to veer suddenly from its right side of the highway to the left side, colliding violently with the station wagon in which plaintiffs were riding.

There was a terrific rain storm in progress and the explanation given for the Maples car leaving its side of the highway and going suddenly to the left was that Sergeant Maples came unexpectedly to a pool of water estimated at from 2 to 4 inches in depth, which caused him to lose control. At the time he emerged from the pool of water he was on the wrong side of the road, and only a short distance from the plaintiff's station wagon. The pool of water was from 200 to 300 feet in length. The brakes of the Maples car were not applied, but when Sergeant Maples saw a collision was imminent, he winked his lights as a warning, without slowing his speed.

As a result of the collision, the father, Arthur J. Hopper, Jr., was fatally injured, dying within a very short time; Mrs. Hopper was thrown through the windshield and seriously injured; and Arthur J. Hopper, III, was seriously injured and the station wagon was completely wrecked.

The actions resulting from this tragedy are: (1) A suit by Mrs. Ruth B. Hopper as administratrix of the estate of her deceased husband, Arthur J. Hopper, Jr., for the value of his life; and for property damage representing the depreciated value of the automobile; and for costs and expenses incident to his death and burial. (2) A suit by Mrs. Ruth B. Hopper in her own right for damage for her personal injuries, and for expenses of medical care, hospital bills and otherwise and for ex-

penses of medical care, hospital bills and loss of service of her sons, Arthur J. Hopper, III, and Thomas P. Hopper. (3) A suit by Arthur J. Hopper, III, by next friend, for his personal injuries.

The suits are all grounded on the claim that Sergeant Maples was driving his car on official business as an employee of the United States; that at the time he was acting in line of duty and within the scope of his office or employment; and that the collision was the direct result of his negligence in operating his car at a careless, negligent and excessive rate of speed in view of traffic conditions; in failing to keep a careful and proper lookout ahead; in failing to keep his car under proper control and permitting it to run over the center line of the road to the left of said center line and in failing to apply the brakes and reduce his speed so as to regain control and avoid a collision with plaintiff's car. The plaintiffs also charge that the defendant violated statutory provisions of the State of Tennessee, consisting of section 2681, section 2682(a) and section 2682(c) of Williams Code of Tennessee, which regulate the use of automobiles on the highways. Said statutes, among other things, provide that any person who shall drive a vehicle upon a highway at such a speed as to endanger the life, limb or property of any person shall be prima facie guilty of reckless driving.

Reckless driving is also defined to include driving a vehicle when not under complete control; and driving to the left of the center of the street or highway except upon one-way streets. Such reckless driving is "expressly prohibited".

The defense of the United States, broadly speaking, is that Sergeant Maples was on this occasion driving his personally owned car, and that he was not acting within the scope of his office or employment.

It is further said that Sergeant Maples was not negligent in his operation of the car; that he was confronted with an emergency not of his own mak-

ing; and that the cause of the collision was the collection of a pool of water in the road which appeared unexpectedly and which he could not anticipate and which caused him to lose control of the car.

Sergeant Maples answers personally in so far as his own negligence was concerned, to the same effect as set out in the answer of the United States. It is denied that his speed was excessive, or that he was guilty of any want of care in crossing the center line of the roadway. The proximate cause of the collision, he insists, was the negligence of the Department of Highways and Public Works of the State of Tennessee in permitting said highway to be submerged with water without giving any warning to users of the highway, or the concurring negligence of the highway department with the negligence of plaintiff's driver in failing to stop when he saw defendant's car in this water, or to pass to the right or left of defendant's car.

Both defendants expressly deny any violations of the statutory provisions above mentioned, which are set up and relied on in the complaint.

As to the first defense of the United States, viz., that Sergeant Maples was not acting within the scope of his office or employment at the time of the collision, but was in his privately owned car and not on duty, the Court has previously considered this question under a motion for summary judgment. On July 31, 1952, a memorandum opinion of the Court was filed, denying said motion, and a formal order thereon was entered on the 15th day of October, 1952.

The result of said opinion was in effect to hold that on the occasion of this collision, Sergeant Maples was on official business and acting within the scope of his office or employment with the United States. The Court's memorandum opinion of that date is here referred to and made a part hereof as the Court's conclusions on that question.

There remains then the question of whether the operation of his car by Sergeant Maples was in this instance negligent, and whether his negligence was the proximate cause of the accident.

There is no serious claim that the plaintiffs, or the driver of plaintiff's car, were guilty of any contributory negligence. They were driving no more than 25 to 30 miles per hour, which all must agree is a reasonable speed on the open highway, even for the unfavorable weather conditions. They were well on their side of the road, with lights burning and windshield wiper working.

There is no dispute that Sergeant Maples' car was across the center line of the road, well on the left side and that the collision occurred on the plaintiffs' proper line of travel.

The Sergeant's explanation that the water in the road caused him to lose control and cross over to the wrong side is not convincing, and under the circumstances does not excuse him.

Numerous other persons driving cars ahead of him had passed through this water without difficulty. He admits himself on the trial that he was driving about 40 miles per hour; and he told the plaintiffs immediately after the accident that he was going 50. He made no effort to apply his brakes. It is idle to say that a car would not come in contact with the surface of the road because it was traveling through water from 2 to 4 inches in depth. The application of the brakes would undoubtedly have retarded the speed and probably enabled the driver to regain control, if temporarily he had lost it.

Under conditions such as then existed, Sergeant Maples was bound to anticipate that water would collect on the highway. To disregard the downpour of rain which had been continuous for several hours, was to be oblivious to all the normal incidents and precautions of safety on the highway. Driving at the rate of 40 or 50 miles per hour under such conditions would undoubtedly be held by reasonable minds to "endanger the life, limb or property" of other persons using the highway, and must be

held to amount to reckless driving, under the statute of Tennessee.

Furthermore, if the water in the road did tend to cause a loss of control, the Court cannot accept such an explanation as justifying a complete diversion of the car from its own direction to a position across the road to the left side. The Court is convinced that Sergeant Maples was not guiding the car with the care and precision which the circumstances required.

Defendant says in his answer, "Defendant does not know what caused the steering gear or apparatus to lock so that the automobile could not be turned either to the right or left."

Whether the steering gear locked from some defective condition or whether the car veered to the wrong side of the road because the driver was careless and failed properly to guide and control it, the responsibility for its being on the left side of the highway and colliding with the plaintiff's station wagon is definitely and solely on Sergeant Maples. The allegation in his answer that he did "not know what caused the steering gear or apparatus to lock", indicates clearly that he did not, when he filed his answer, attribute it to the water in the highway. The allegation in his answer that the responsibility for the accident was on the Department of Highways and Public Works of the State was apparently abandoned on the trial.

If there was any emergency created by the water collected in the highway as claimed by defendant, the emergency was of the driver's own making, caused by his excessive speed and heedless, careless driving. Numerous other cars had passed through this water just in front of him, without inconvenience or accident.

Generally speaking, Sergeant Maples should have had his car under such control that when he saw the water in the road or when he first ran into it as an obstacle, he could have stopped, or slowed down to a safe speed.

■ The driver of an automobile cannot successfully invoke the emergency rule where his own negligence led him into the emergency. Nonsey & Schwab v. Slover, 14 Tenn.App. 42, 49; Stanford v. Holloway, 25 Tenn.App. 379, 157 S.W.2d 864; Cullom v. Glasgow, 3 Tenn.App. 443; Caldwell v. Hodges, 18 Tenn.App. 355, 357, 77 S. W.2d 817; Chumley v. Anderton, 20 Tenn.App. 621, 622, 103 S.W.2d 331; Shook v. Simmons, 23 Tenn.App. 685, 137 S.W.2d 332; 60 C.J.S., Motor Vehicles, § 290, page 680.

■ The general rule is that the driver of an automobile is required by law to drive at such a rate of speed that he can stop within the distance that his lights will disclose objects that are obstructions ahead of him. West Const. Co. v. White, 130 Tenn. 520, 172 S.W. 301; Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn. 487, 178 S.W. 1117, L.R.A. 1916A, 1111; Sterchi Bros. Stores, Inc., v. Bird, 15 Tenn.App. 240; Cleveland Transfer Co. v. Clark, 6 Tenn. App. 364.

The rule found in the above cases has been slightly modified in Main St. Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S.W.2d 665, and Halfacre v. Hart, 192 Tenn. 342, 241 S.W.2d 421, but only to the extent that it is not negligence *as a matter of law* to drive at a speed which will absolutely not permit the driver to stop in the distance of his lights. Whether there is negligence or not is a question of fact for the trier of the facts where stopping is impracticable.

Exceptional circumstances may render the above rule inapplicable, but the exceptional circumstances must be such as to make stopping the car impracticable. City of Knoxville v. Horne, 22 Tenn.App. 192, 195, 120 S.W.2d 964.

■ The fact that the weather was rainy and dark and the driver was compelled to use dimmers on lights did not relieve him of the duty of driving at such a rate of speed that he could stop

his car within the distance illuminated by his lights. Cleveland Transfer Co. v. Clark, supra.

A motorist must keep his automobile under control when driving on slippery streets, and if he operates it so that it is out of control, he is guilty of negligence. Stanford v. Holloway, 25 Tenn.App. 379, 157 S.W.2d 864.

A driver driving on wet and slippery streets must know that his car cannot be stopped as readily as on dry streets and must operate his car accordingly, and if he operates it so that it is out of his control he is guilty of negligence. National Cash Register v. Leach, 3 Tenn.App. 411.

The fact that it was raining, and the night misty and dark does not change the principle that the car must be kept at a speed that will be under control, and which will permit bringing it to a stop within the distance that his lights will disclose obstructions ahead. Harris v. Hendrixson, 25 Tenn.App. 221, 155 S. W.2d 876.

Quantum of care required of motorist is measured by exigencies of particular situation and is commensurate with risk of injury to others, having in view condition of traffic at time and place and nature and condition of machine being operated. Caldwell v. Hodges, supra.

The car of Sergeant Maples was being driven in violation of the statutes of Tennessee, referred to above, which prohibit the driving across the center line of the street or highway except on one-way streets.

A party driving a car in violation of a state law or municipal ordinance is guilty of negligence per se. Power Packing Co. v. Borum, 8 Tenn. App. 162; Queen v. Dayton Coal & Iron Co., 95 Tenn. 458, 32 S.W. 460, 30 L. R.A. 82; Memphis St. R. Co. v. Haynes, 112 Tenn. 712, 713, 81 S.W. 374; Iron & Wire Co. v. Green, 108 Tenn. 161, 65 S.W. 399; Chattanooga Ry. & Light Co. v. Bettis, 139 Tenn. 332, 202 S.W. 70;

Tinin v. Siner, 9 Tenn.App. 252; Croson v. Marsh, 12 Tenn.App. 33.

The speed of the car must be commensurate with the conditions of the atmosphere and the highway.

One may be guilty of operating an automobile at a negligent rate of speed and still be well within the rate prescribed by statute or ordinance. Gulf Refining Co. v. Frazier, 15 Tenn. App. 662, 667; citing Berry on Automobiles.

The Tennessee statute making it the duty of travelers on highway to drive to right of center of street or highway except on one-way streets is a regulation to avoid collisions, and if one neglects it and an accident follows an explanation of the occurrence begins with a presumption against him. Evansville Container Corp. v. McDonald, 6 Cir., 132 F.2d 80.

"When [the driver's] vision is interfered with for any reason, it is incumbent on the driver of a motor vehicle to exercise care commensurate with the danger of injury which might result therefrom, and, accordingly, he should slacken the speed of his vehicle and have it under control and refrain from operating it at a speed and in such manner as might cause injury to others. * * * A speed which might be reasonable and proper under ordinary circumstances may be excessive and improper where the driver's view of the highway is in any way interfered with, as where he is * * * driving through fog, smoke, dust, or snow, or his windshield is covered with sleet and snow, frost, or rain." 60 C.J.S., Motor Vehicles, § 294, pages 697, 699, 700.

A motorist is bound to take notice of the road to observe conditions along the way, and to know what is in front of him for a reasonable distance. 60 C.J.S., Motor Vehicles, § 284, page 663.

A more diligent observation is required where the conditions are such as to increase the danger of accident, as where climatic conditions have made the highway or street more hazardous to drive on than usual. 60 C.J.S., Motor Vehicles, § 284, page 664.

"An automobile driver is required, in the exercise of reasonable care, to use a high degree of caution, or to take increased precautions, where existing conditions interfere with his vision ahead of his car, as where his vision is temporarily impaired * * * [or] obscured by atmospheric conditions, such as fog, rain, or moisture * * *." 60 C.J.S., Motor Vehicles, § 285, pages 669, 670.

The Court is of the opinion and so finds that the collision with plaintiff's station wagon was due to the excessive and negligent rate of speed that Sergeant Maples was traveling; to his negligence in failing to take the precautions in driving which the conditions of the highway and the atmospheric conditions required; and to his negligence in permitting his car to cross the center line of the highway into the path of plaintiff's oncoming automobile. Such negligence was also supplemented by his negligent failure to apply his brakes so as to slow down and regain control of his car.

The Court, therefore, finds the issues in favor of the plaintiffs in each case and against the United States of America.

In the case of Ruth B. Hopper, Administratrix of the Estate of Arthur J. Hopper, Jr., deceased, a judgment is awarded in favor of the plaintiff and against the United States for $43,125, a sum representing the pecuniary value of the life of the deceased, as provided by the statutes of Tennessee, and $750 for funeral and burial expenses, making a total of $43,875.

The deceased was, at the time of his death, 47 years of age, with an expectancy of 23 years. He was in sound health as reported by a recent periodical check up of his physician. He was a professional engineer, a graduate of Cornell University, and employed by Welding Engineers, Inc., at Norristown, Pennsylvania, at a salary of $6,948 per year. His salary had been increased to $7,500 to commence on his return from this trip, January 1, 1952. His employer indicates that his salary would in due time reach $10,000 per year. He was highly regarded both professionally and personally.

A judgment is also awarded Ruth B. Hopper, Administratrix, for the sum of $2,850 for damage to the Packard station wagon and tools and other contents of the car that were destroyed or lost.

In the case of Ruth B. Hopper, a judgment is awarded in the sum of $18,440.25. This includes awards for her personal injuries, hospital and doctor bills for herself and two boys and loss of service for the two boys.

Mrs. Hopper was thrown through the windshield of the station wagon and seriously and permanently injured. There were multiple contusions and abrasions, severe lacerations of the face and neck, severe contusions of the right breast, left arm and right hand and both knees. Her front teeth were broken. She was taken immediately to a hospital in Chattanooga where she remained for 5 days. She was given blood plasma and penicillin. About 60 sutures were applied to her face; her forehead was cut open all the way across; her face and chin were open to the jaw; the left eyelid was cut in half and her nose was almost completely severed. She was confined in bed at her home until about January 15, 1952. She continues to be extremely nervous, suffers pain from knee injuries, making it difficult to walk. Her breast also gives her pain and the danger of malignant developments are apparent. There are scars and permanent disfigurements of her face. However, Mrs. Hopper is a very courageous woman and has had a most remarkable recovery and comeback.

In the case of Arthur J. Hopper, III, a minor, who sues by next friend, a judgment is awarded for his personal injuries in the sum of $15,000.

His injuries were serious and perhaps permanent. He sustained a fractured mandible and two ribs and severe injuries to his teeth. There were multiple contusions and abrasions of the right hand and arm, both knees, chest, face and other parts of his body. Perhaps the most serious injury was a cerebral concussion, as a result of which he was incapacitated from attending school at the University, and also from any work which he attempted, except light manual labor. Because of the severe headaches which developed, he was taken to Lenox Hill Hospital in New York for diagnosis and treatment. He was treated both by general practitioners and also by psychiatrists and brain specialists and they have expressed the opinion that his brain injury will result in a permanent disability.

The Court observed this boy as he testified and has given careful consideration to the proof concerning his injuries, which leaves an uncertainty as to the extent of the impairment of earning capacity of this young man as well as to the extent of his future pain and discomfort. Therefore, the Court has allowed an amount consistent with the proof of injury and yet in accord with the uncertainty of conditions above set out.

The judgment having been awarded the plaintiffs against the United States, no judgment will be announced against Sergeant Clarence H. Maples. Title 28 U.S.C.A. § 2676.

The Court has not been advised as to any arrangements relative to attorneys' fees, but on application will fix the amount of fees pursuant to the provisions of section 2678 of Title 28, U.S. C.A.

This opinion will serve as the findings of fact and conclusions of law.

Judgments will be submitted for approval.