**Phillip T. MANN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 5110.**

United States District Court
E. D. Tennessee, S. D.

April 12, 1968.

Harold E. Brown, Ray E. Siener, Chattanooga, Tenn., for plaintiff.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for personal injuries by an agent of the Tennessee alcoholic beverage commission under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674 and 2671. It was tried by the Court without a jury on March 14, 1968. Trial briefs and proposed findings of fact and conclusions of law have now been filed by opposing counsel.

For some time prior to February 2, 1967, the Tennessee alcoholic beverage commission and the alcohol and tobacco tax division of the Internal Revenue Service, federal Treasury Department, had been engaged in a hybrid administrative undertaking. The primary function of both of these agencies being the enforcement of respective state and federal laws relating to intoxicating liquor, an agreement had been evolved whereby certain state ABC agents were assigned to, and provided desk space in, the offices of the federal ATTD unit in Chattanooga, Tennessee. Under this cooperative plan, such state agents were under the overall supervision of the federal agent-in-charge at Chattanooga; as to field operations, however, the respective agents performed their functions without prior understanding, except in one particular, infra.

In a situation where a state agent was conducting a particular investigation, the state agents' preferences as to *modus operandi* were customarily determined by the state agents, with the assistance of the federal agents. Conversely, if a particular probe was initiated by federal agents, they usually made the detailed decisions for both groups. However, supra, in the event of differing opinions as to procedure, the federal agents reserved the final decision. This program of mutual assistance extended to matters such as the use of motor vehicles of the federal or Tennessee state government, the decision as to use of a particular automobile falling in the category of a field operations determination.

On the aforementioned date, the plaintiff Mr. Mann had been thus assigned and was in the general area of Marion County, Tennessee, with state agents Vetters and Swecker and federal agent Roy R. Tubb in a federal automobile engaged in making numerous investigations. Mr. Vetters left the group, and the others aforenamed proceeded on East Valley Road to the Sequatchie section of Marion County. Rain began to fall, and about 7:00 o'clock, a. m. Mr. Tubb, who was then driving, observed that the automobile had a tendency to skid when being turned on the wet pavement. He asked the other agents to remind him afterward to place a requisition for new tires for the vehicle.

The officers continued their investigations during the intermittent downpour on the Battle Creek Road and near South Pittsburg, Tennessee. They then proceeded via Bridgeport, Alabama to the summit of Orme Mountain, where state agent David B. Swecker wished to make a personal investigation. At some point, Mr. Swecker had succeeded Mr. Tubb as the driver. The agents approached the mountain top via the "back road", which was dirt with some rock and gravel mixed therewith.

As Mr. Swecker departed the vehicle to make the inspection he desired, the plaintiff Mr. Mann moved to a place under the steering wheel. At that moment, however, a hard downpour of rain commenced, and at the urging of Mr. Tubb, Mr. Swecker returned to the front seat of the vehicle. The agents began a descent of the mountain with Mr. Mann driving.

The plaintiff Mr. Mann testified that Mr. Tubb was asleep in the back seat during the trip down the front side of the mountain, but agent Tubb testified that he was awake, sitting forward, with his arms resting on the back of the front seat. Mr. Mann also testified that agent Swecker[1] warned him during the ride

---

1. Mr. Swecker was occupied in a state criminal court away from Chattanooga during this trial and did not testify.

down the mountain to " * * * be careful on this road, it's slick. * * * " Agent Tubb testified that it was he who forewarned the plaintiff to exercise care because of the slippery condition of the road. He stated further, and Mr. Mann denies, that the plaintiff afterward slapped Mr. Swecker on the knee, made some inquiry as to whether anyone was "scared", and jerked the steering wheel from one side to the other and back. However those disputed matters may have been, the plaintiff Mr. Mann had (a) been made aware that the tires on the automobile he was operating were thought to need replacing and (b) been forewarned by someone in some manner that extraordinary care was indicated in operating the vehicle down the mountainside on a wet pavement.[2]

The plaintiff negotiated the first three or four miles of typically curving mountain road during the descent, including a so-called "hairpin" U-type curve, without incident. In this portion of the trip, the plaintiff Mr. Mann found the brakes operating efficiently.[3]

When the vehicle reached a point about ½ mile from the bottom of the mountain, the road was relatively straighter with more gradual curves. The plaintiff was driving down a grade of about eight per cent on the wet pavement at a speed of 30 to 35 miles per hour. As the vehicle entered a curve to its left,[4] Mr. Mann applied the brakes,[5] became aware that the automobile would not successfully negotiate the curve, and cried out: " * * * The brakes aren't going to hold! * * * " The automobile slid off the side of the roadway at an early point in the curve, struck a sapling of a diameter of 3" or 4" headon, with the rear of the vehicle coming to rest with its right side against other trees and undergrowth.[6]

The plaintiff was not utilizing an available seat belt[7] and was thrown in the impact against the steering wheel, dashboard and windshield. He was rendered unconscious in the collision, was transported by ambulance to a Chattanooga hospital and subsequently was hospitalized for six days. A full sleeve (cylindrical) cast was applied to his left leg, and Mr. Mann wore this cast for five weeks. It was necessary after his hospitalization for Mr. Mann to sleep on a wooden board in his bed. He was ambulatory with the aid of crutches in his home. Drainage in his knee required cortisone injections before the cast was removed.

It is stipulated that Mr. Mann expended $1,127.74 for medical expenses as a result of this accident, $776.88 of which was reimbursed by the state of Tennessee on order of its board of claims.[8] In

---

2. The pavement at this point was described as blacktop with rough projections of gravel therein.

3. The brake drums had been cleaned on November 19, 1966, and the rear brakes had been relined on January 23, 1967. Contrary to his previous claims, Mr. Mann testified he no longer believed the brakes on the vehicle were in improper working condition, but that the difficulty emanated from the worn tires sliding on the wet pavement.

4. The plaintiff testified, contrary to the photographs of the scene of the accident, that this curve was to his right.

5. Mr. Mann testified that he touched his brake pedal intermittently during the skidding; while Mr. Tubb testified it was his sensed impression that the brakes were locked during the entire period of the skidding.

6. Otherwise, the automobile probably would have gone over the side of a deep precipice.

7. Failure to wear seat belts does not constitute contributory negligence in Tennessee. T.C.A. § 59–930.

8. His employer also awarded Mr. Mann $1,630.57 on a medical opinion that he had sustained a partial permanent "disability" of 25% to his left leg. (Mr. Mann testified that his physician, who had attended him earlier, infra, advised that the so-called "disability" was referable to his lower extremities.) On May 13, 1966, the plaintiff sustained injuries to his right leg and lower back and was hospitalized for six days as a result of an intersectional collision between a vehicle and a Chattanooga patrol car, while he was serving as a police officer of that city.

the accident Mr. Mann received a contusion of his left scalp, an abrasion of his right hand, tenderness in his left chest, a muscle spasm about his left hip, and swelling and tenderness of his left knee. X-ray examination revealed a fracture of his left anterior tibial spine, with a slight separation and a fragmented fracture of the posterior aspect of his acetabulum.[9] When he was last examined on April 17, 1967, Mr. Mann was found to have a ¾″ atrophy of his left thigh and a ½″ atrophy of his left calf. Exercises were prescribed to improve these conditions. The tibial spine healed.

 The plaintiff claims that employees of the United States were proximately negligent: in failing to provide the agents with a vehicle that could be operated in reasonable safety on roadways, in failing to maintain its automobile in a reasonably safe condition, in providing an automobile with tires which were in such a worn condition as foreseeably to render them useless on a slippery pavement, and by failing to take necessary and adequate precautions to prevent mischievous consequences which could be expected to occur from a condition of which such employees knew, or should have known.[10] The defendant denies negligence on the part of its employees and claims that, in negligently disregarding the slippery condition of the road, which was obvious, and of which he had been forewarned, and in continuing to drive in a negligent manner thereafter, the plaintiff was guilty of negligence which caused the ensuing accident.

 This Court agrees. "* * * The quantum of care required of motorists is measured by the exigencies of the particular situation and is commensurate with the risk of injury * * *, having in view the * * * condition of the machine being operated. Caldwell v.

Hodges, C.A.Tenn. (1935), 18 Tenn.App. 355, 357, 77 S.W.2d 817, 822; Hopper v. United States, supra [D.C.Tenn. (1953), 122 F.Supp. 181]. 'A more diligent observation is required where the conditions are such as to increase the danger of accident, as where climatic conditions have made the highway * * * more hazardous to drive on than usual.' Hopper v. United States, supra, 122 F.Supp. at p. 189, citing 60 C.J.S. Motor Vehicles § 284, p. 664.

"Skidding is not beyond the control of the driver of a motor vehicle. It results from definite physical factors such as speed. '* * * Wet * * * roads are potent and well known dangers which may be diminished by the * * * reduction of speed. * * *' Stanford v. Holloway, supra, [C.A.Tenn. (1941)], 25 Tenn.App. [379] pp. 386–387, 157 S.W.2d [864] p. 869, citing Grizzard & Cuzzort v. O'Neill, C.A.Tenn. (1939), 15 Tenn. App. 395, 399. * * *" Cline v. United States, D.C.Tenn. (1962), 214 F.Supp. 66, 73 [15].

██ ██ The Court finds and concludes that it was the proximate or contributory negligence of the plaintiff Mr. Mann which led to his injuries and damages. He knew of the questionable condition of the tires on the vehicle of the federal government which he was driving. He was traversing a curving mountain roadway. The wet condition of the pavement, concerning which he had been so recently forewarned, rendered the highway over which he was driving more hazardous than usual. These apparent dangers required Mr. Mann to reduce his speed, yet he was operating the automobile with worn tires in the rain down a mountain at a speed of 30 to 35 miles an hour by his own admission. "* * * [T]he fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contribu-

---

9. The large cup-shaped cavity on the lateral surface of the oscoxae in which the head of the femur articulates. Dorland's Medical Dictionary, 23rd ed., p. 10.

10. This is an abortive effort on the part of the plaintiff to plead liability of the

defendant without fault. Such a theory cannot provide the basis of liability on the part of the national sovereign. Dalehite v. United States (1953), 346 U.S. 15, 45, 73 S.Ct. 956, 97 L.Ed. 1427, 1445 (headnote 13).

torily negligent if accident or injury ensues. \* \* \* " Wilson v. Moudy, C.A. Tenn. (1938), 22 Tenn.App. 356, 123 S. W.2d 828, 838 certiorari denied (1939).

Mr. Mann asserts belatedly that the worn condition of the tires on the defendant's vehicle constituted a nuisance. Mr. Mann's lack of care for his own protection is equally a defense under his nuisance theory, which could rest upon nothing more than negligence on the part of the defendant's employees. See The Law of Torts, Prosser, 2nd ed. (1955), 423–426, ch. 14, § 74. " \* \* \* Negligence and causal relation are prerequisites to recovery under the Federal Tort Claims Act. \* \* \* " Mahoney v. United States, D.C.Tenn. (1963), 220 F. Supp. 823, 826 [2]. The Federal Tort Claims Act does not provide for strict liability of the federal government for maintaining an inherently dangerous vehicle. Cf. Dalehite v. United States (1953), supra, 346 U.S. at 45, 73 S.Ct. at 972, 97 L.Ed. at 1445 (headnote 13).

All relief will be denied the plaintiff. The clerk will prepare, sign and enter an order dismissing the complaint herein, Rule 58, Federal Rules of Civil Procedure.