**BARTHOLOMAE CORPORATION,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 15141.**

United States Court of Appeals
Ninth Circuit.

Aug. 15, 1957.

Rehearing Denied Jan. 11, 1958.

Richard M. Buxbaum, Rochester, N. Y. (Frederick Thompson, Rochester, N. Y., on the brief), for petitioners.

Sheldon I. Fink, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and BRENNAN, District Judge.

Irl Davis Brett, Los Angeles, Cal., for appellant.

George C. Doub, Asst. Atty. Gen., Melvin Richter, Lester S. Jayson and Paul A. Sweeney, Attys., Department of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Andrew J. Weisz, Asst., U. S. Atty., Los Angeles, Cal., for appellee.

Before FEE, BARNES and HAMLEY, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Bartholomae Corporation brought action against the United States for damages to certain buildings on land owned by it. It was claimed such damage was caused by atomic energy and nuclear detonations, conducted by employees of the United States at a site known as Frenchman's Flat, about 150 miles southwest of the property of plaintiff. Two counts are founded in negligent detonation of explosives by agents of the government in the course of employment and the presumption arising by the doctrine of res ipsa loquitur. One count is based upon a supposed absolute liability, and the final count is predicated upon the theory there was a taking in eminent domain.

About an hour before the nuclear detonation in question, high explosives were set off in the same area and the effect recorded on the eight microbaragraphs—the entire available supply of such instruments in the United States. These instruments were placed at strategic points, according to the judgment of a highly trained scientist. These instruments were placed in heavily populated areas, but none to the north, in which general direction the land of plaintiff lay. The placement and scaled-up readings from these instruments, the prevailing weather conditions and the force expected were placed before a

board of experts, who approved the particular detonation complained of here.

Plaintiff contended there was negligence in detonating the nuclear mass, if damage were caused thereby, and, in particular, that negligence of an employee of the government was shown because a microbaragraph was not placed to the north of the site.

■ The trial court concluded that plaintiff could not recover on the theory of liability without fault. We agree.[1] The trial court also determined as a matter of law that there was not a taking of the property of plaintiff for a public use.[2] We affirm this holding.

The evidence of plaintiff indicated that the property, which is located in an isolated area, had been examined a month or more before the explosion and that the cracks later existing were not then discovered. A witness testified that the buildings were violently shaken during the atomic explosions of October 22, 1951, and November 5, 1951. On the first blast, a cattle stampede took place. Another witness testified that the last shock threw her to the floor and that she ran out of the office building and saw dust mushrooming up over the mountain to the south and southwest of the headquarters area. About this period, the plaster in the buildings on the land of plaintiff showed evidence of cracking.

The record shows other facts. The United States, through the Atomic Energy Commission,[3] was performing a series of experiments in nuclear detonation, of which the explosions complained of were two. The series had the approval of various agencies and the President of the United States, by whom the continental testing ground was established and the detonation of the devices used in the series was authorized. In view of the fact that weather conditions may cause the bending down of shock waves from an explosion, certain precautions were taken to ascertain the course and strength of these waves, if possible. Although at the state of scientific progress attained at the time of this test series it was impossible to predict whether and where such bending might occur, the trial court found "that every precaution for the public's safety was exercised, commensurate with the task to be performed, and the equipment and scientific knowledge available."

As to the remaining contentions, the trial court made the following finding of fact:

"Upon the evidence before it, this Court cannot find that any officer or employee of the United States was negligent in the performance of his duties relating to atomic experimentation, or that the atomic detonations were the proximate cause of the damage to plaintiff's property. The Court finds that blast waves released from atomic detonations during the period in question may have reached the property of plaintiff on one or two occasions during the period involved. The Court further finds that as to each such blast wave from the atomic detonation reaching the land of plaintiff, if any, the shock wave was uncontrollable and unpredictable under the circumstances obtaining."

This finding is correct and is affirmed upon the record before this Court.

1. Dalehite v. United States, 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427; United States v. Ure, 9 Cir., 225 F.2d 709, 711.

2. "Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an exent that, as between private parties, a servitude has been acquired either by agreement or in course of time." United States v. Dickinson, 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789. Such is not the case here.

3. See also Atomic Energy Act of 1946, § 2 (b), (c), 42 U.S.C.A. § 1802(b), (c), now 42 U.S.C.A. §§ 2036, 2037, providing for a General Advisory Committee and Military Liaison Committee, respectively.

■ The law of the State of Nevada between private parties has been neglected by both parties to this case. It is not unusual to find this situation in the briefs and arguments in this type case. But there is, so we have been taught, no federal common law.[4] The Tort Claims Act, 28 U.S.C.A. § 2674, expressly establishes the law of the state where the incident occurred applicable to private parties as the criterion by which the liability of the federal government under like facts may be found.

■ This Court has no means of predicting what the courts of Nevada would decide if confronted with the exact situation here between private parties. However, it is well established at common law that a blast of air, caused by an explosion, rushing over distant real property is not a trespass. It is possible, of course, that the courts of Nevada may impose liability between private parties for the consequences of any atomic blast, irrespective of fault. This Court is not, upon these findings, required to indulge in any recondite speculations on this question. The parties have disregarded entirely the law of Nevada, as though that element could have no effect upon the result. The statute squarely states the contrary.[5]

■ This much is certain. The cooperation of the legislative and executive departments of the United States, in the firing of this atomic device, has been such that no liability can be predicated upon the fact of the explosions themselves, whatever the consequences.

■ Therefore, negligence alone could found the action. The statute in question specifically so provides. The trial court explicitly found there was no neg-

ligence. The record supports this finding. The only persons qualified to speak on the precautions taken to guard the particular explosion were the eminent scientists who conducted the experiment. The best possible known method of protection from unexpected deflection of the blast pressures from atomic detonation is by testing the prevailing weather conditions about an hour before such nuclear explosion is to take place. In this test, ordinary high explosives are detonated and recorded upon instruments called microbaragraphs. There were only eight of such instruments in the United States. All of these were obtained and used to record the test explosion. Admittedly, one of these instruments was placed on the periphery of each heavily populated area. None was placed to record the test in the direction of the ranch buildings of plaintiff, about one hundred fifty miles away.

Admittedly, this test, the results of which were approved by a board of experts, provided the only precaution for the public safety which was commensurate with the equipment and scientific knowledge available. It cannot be said that the ordinary reasonable man would have taken other precautions.

It still is agreed by the experts that it is impossible to predict, even with the advantageous aids available, what effect weather conditions will have on the propagation of shock or blast waves by atomic detonation. Such waves are uncontrollable and unpredictable. Under these circumstances, it may be conceived to be a fault that the detonation took place at all. But these officers were under direct mandate of Congress and the Executive to proceed. It cannot be conceived that the Tort Claims Act ap-

---

4. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188.

5. 28 U.S.C.A. § 1346(2) (b) grants exclusive jurisdiction "of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

plies under the circumstances. If any liability can be predicated at all, it is absolute and without proven fault. Upon this there can be no recovery.

Another crucial finding of the trial court is conclusive of this case:

"Upon the evidence before it, this Court cannot find * * * that the atomic detonations were the proximate cause of the damage to plaintiff's property."

The law of Nevada requires plaintiff in a negligence case to prove not only that the employees of defendant were negligent, but that such negligence, if any, was the proximate cause of damage to plaintiff before there can be recovery.[6] There was evidence of a strong rush of air in and around the buildings of plaintiff after the atomic detonation. But the trial court did not, and was not obliged to, find from this and other evidence submitted by plaintiff that this rush of air damaged the buildings. The weight to be attached to this evidence was for determination by the trial court. There was some evidence that the damage was caused by other forces. The finding of the trial court must stand unless clearly erroneous. This Court is not convinced on the record that a mistake has been made or that the trial court was wrong in this finding.

Based upon the findings of fact, this Court affirms the District Court.

Under these circumstances, it is unnecessary for this Court to discuss, as did the trial judge, the application of the discretion rule in the Dalehite case.[7] Suffice it to say, the recent cases on the subject show that the foundation has not completely stabilized. We need not resolve these conflicts in order to decide this case.

Affirmed.

6. Nevada Transfer and Warehouse Company v. Peterson, 60 Nev. 87, 107–108, 89 P.2d 8, 99 P.2d 633; Weck v. Reno Traction Co., 38 Nev. 285, 297, 149 P. 65.

7. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.