In re BOMB DISASTER AT
ROSEVILLE, CALIFORNIA,
ON APRIL 28, 1973.

MDL No. 207.

United States District Court,
E. D. California.

Sept. 19, 1977.

Thomas W. Martin, Gerald J. Adler, Crow, Lytle & Gilwee, Sacramento, Cal., Al Levy, Goldstein, Barceloux & Goldstein, San Francisco, Cal., Andrew J. Smolich, Bertolani, Smolich & Tai, Myron Gowan, Sacramento, Cal., Paul Melee, Citrus Heights, Cal., Laurence C. Blunt, James V. Sarro, Sarro & Smith, Jack N. Martin, Martin & Lewis, Lloyd Hinkelman, Kronick, Moskovitz, Tiedemann & Girard, John E. Virga, James L. Mikacich, David A. Tallant, George M. McClarrinon, Jack C. Sevey, O'Connor, Sevey & Gessford, Richard E. Lehrfeld, Lehrfeld, Brand & Jordan, Kenneth B. Cayocca, Richard F. Mills, Thomas J. Vicari, Richard F. Mills Law Corp., Sacramento, Cal., Marvin Brown, Brookman & McCloskey, Oakland, Cal., Dale W. Mahon, John B. Heinrich, Robert A. Perry, John Saldine, Saldine & Perry, Nathaniel S. Colley, Nathaniel S. Colley, Inc., George W. Bullen, Gerald Thomas, Bullen, McKone, McKinley, Gay & Keitges, Sacramento, Cal., Ivor E. Samson, San Francisco, Cal., Philip H. Shedd, Sacramento, Cal., Jeffrey E. Karpel, Los Angeles, Cal., A. Kirk McKenzie, Ronald Mallen, Long & Levit, San Francisco, Cal., John J. Bible, Bible, Corey, Henson & Orton, San Bruno, Cal., Mort Friedman, Friedman, Collard & Kauffman, A Professional Corp., Sacramento, Cal., Robert R. Callan, Cooper, White § Cooper, San Francisco, Cal., Norwood R. Erich, Hardy, Erich & Brown, James H. Schenk, Sacramento, Cal., Julius Kahn, Dodge, Reyes, Brorby, Kahn & Driscoll, San Francisco, Cal., Raymond S. Torkelson, Sacramento, Cal., Gary Hill, Donahue, Gallagher, Thomas & Woods, Oakland, Cal., Ralph Nase, John L. Giordano, Sacramento, Cal., David R. Lane, Rich, Fuidge, Dawson, Marsh, Morris Sanbrook, Grove, Hill & Iverson, Marysville, Cal., James S. Reed, Thomas C. Westley, James E. Harrison, Brennan, Harrison & Yun, D. M. Perkovich, Jerrold B. Braunstein, Rowland & Parker, Sacramento, Cal., Lawrence F. Meyer, Vincent J. Aiken, McClean, Greenwald & Hoffman, Los Angeles, Cal., James Moushegian, Gordon & Rees, San Francisco, Cal., Clark Deichler, John H. Mount, Oakland, Cal., Dale E. Ordas, Sacramento, Cal., Ronald N. Paul, Downey, Brand, Seymour & Rohwer, Sacramento, Cal., John Spencer Stewart, Kobin & Meyer, Portland, Or., David S. Kaplan, William Weniger, Stroud & Weniger, Sacramento, Cal., Frederick L. Nelson, Hildebrand, McLeod & Nelson, Oakland, Cal., for plaintiffs.

Walter E. Gallawa, Hoffman, Mayhew & Gallawa, A Professional Corp., Sacramento, Cal., for plaintiffs and Griffin Wheen Co.

Harry S. Fenton, Michael A. Grob, Sacramento, Cal., for Dept. of Transp.

Patrick Becherer, Raoul D. Kennedy, Crosby, Heafey, Roach & May, Oakland, Cal., Thomas A. Phemister, Asst. Gen. Counsel, Association of American Railroads, Washington, D.C., for Association of American Railroads.

John F. Foran, Rust & Armenis, Sacramento, Cal., for Texas & Pacific Railroad Co., Missouri & Pacific Railroads.

James R. Diepenbrock, Jack V. Lovell, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for Southern Pacific.

Robert B. Miller, James Joiner, Sacramento, Cal., for Sp. Litigation Unit, Civ. Div., Dept. of Justice.

M. H. Pothoven, Gerald K. Petersen, Bolling, Pothoven, Walter & Gawthrop, Sacramento, Cal., for Abex Corp.

John Coleman, Hoffman, Mayhew & Gallawa, Sacramento, Cal., for Griffin Wheen Co.

Bruce L. Shaffer, Albert B. Norris, Memering, Stumbos, DeMers, Ford & Norris, Sacramento, Cal., for Reybestos-Manhatten Inc.

Claire H. Greve, Johnson, Greve, Clifford & Diepenbrock, Sacramento, Cal., for Johns-Manville Sales Co., Railroad Friction Products, & Westinghouse Air Brake Co.

James C. Brown, Barrett, Newlan & Matheny, Sacramento, Cal., for Pullman, Inc.

Jack L. Koblin, Detroit, Mich., for Chrysler Corporation.

J. D. Burdick, David Crawford, Carroll, Burdick & McDonough, San Francisco, Cal., for Kinney Vacuum.

## OPINION

MacBRIDE, Chief Judge.

The United States has moved the court in the referenced cases to dismiss for lack of jurisdiction plaintiffs' claims which are premised on absolute liability for the miscarriage of an ultrahazardous activity and strict liability in tort. These cases are now consolidated for pretrial purposes pursuant to 28 U.S.C. § 1407(a) as Multidistrict Docket Litigation (MDL) Number 207.

All of these cases arise out of the explosion of eighteen bomb laden boxcars in Southern Pacific Transportation Company's Antelope Yard in Roseville, California. The bombs had been manufactured at the United States' Naval Ammunition Depot at Hawthorne, Nevada, were loaded into government DODX boxcars by the government in Nevada, and the loaded boxcars were thereafter turned over to the Southern Pacific Transportation Company (hereinafter Southern Pacific) in Nevada. Southern Pacific received the boxcars and bombs for shipment to Port Chicago, California, under a contract with the Department of the Navy. The explosion of the boxcars enroute to Port Chicago has resulted in the filing of over a hundred cases against the United States in Nevada and California federal courts. Three of the cases which are the subject of these motions were originally filed in the District of Nevada and were transferred to this district for pretrial purposes pursuant to 28 U.S.C. § 1407(a): Civ. S–75–558, Civ. S–559, and Civ. S–560.

Plaintiffs, in the cases which are the subject of these motions to dismiss, are individuals, insurance companies, businesses, and the State of California. Some but not all the plaintiffs have alleged claims against the United States on a theory of absolute liability for the miscarriage of an ultrahazardous activity. In these claims the plaintiffs allege that the ultrahazardous activity involved, *inter alia,* the loading and bracing of bombs or the shipping of bombs. Also, some but not all the plaintiffs have alleged claims against the United States on a theory of strict liability in tort. In support of these strict liability claims, plaintiffs allege, *inter alia,* that the United States manufactured defective bombs, caused to be manufactured and thereafter used defective boxcars, and failed to warn the plaintiffs and others of the dangerous condition of the bombs and boxcars.

■ The claims based on the miscarriage of an ultrahazardous activity may be summarily dismissed. On two occasions the Supreme Court has held that the United States may not be held absolutely liable on such a theory. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

Plaintiffs' claims premised on strict liability in tort are more troublesome. A review of the authorities cited by the parties and the court's own research reveals a paucity of judicial opinion on this question. While *Dalehite v. United States, supra,* and *Laird v. Nelms, supra,* provide considerable guidance in resolving this issue, only a handful of cases have discussed, even in passing, the propriety of holding the United States strictly liable in tort under the Federal Tort Claims Act (FTCA).

In *United States v. Page,* 350 F.2d 28 (10th Cir. 1965), plaintiff sought to recover from the government on a theory of absolute liability for the miscarriage of an ultrahazardous activity, and the district court entered judgment for the plaintiff on this theory. Reversing plaintiff's judgment on the ultrahazardous activity theory, the court stated:

"In any event as to the dangerous chattel issue, the Tort Claims Act contemplates circumstances where there is negligence

of a Government *employee* either by act or omission. It does not by its terms include liability imposed by other doctrines having their origin in warranties, in product liability, or in absolute liability."

Clearly, the *Page* court's statement regarding products liability is pure *dicta,* although its broad reading of the statutory language may be significant.

Additional *dicta* disapproving strict liability in tort appears in *Allison v. United States,* 264 F.Supp. 1021 (Ill.1967), a case in which the plaintiff sought to recover only on a theory of negligence of the United States' agents or employees. Plaintiff had purchased, as scrap, a number of hydraulic shock absorbers that had once been a part of an Air Force airplane. The scrap was sold "as is" by the government—without any warranty. As plaintiff was cutting a shock absorber with an acetylene torch, the absorber exploded, injuring him. The district court rejected the plaintiff's contention that the government had been negligent in failing to warn the plaintiff-purchaser of the dangers involved in cutting the absorbers, finding that the dangers involved were obvious. In conclusion, the *Allison* court noted:

"7. To establish liability for personal injuries against the United States under the Federal Tort Claims Act, plaintiff must prove a negligent act or omission by a Government employee and cannot base liability on a theory that has its origin in warranties, product liability, or absolute liability. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *United States v. Page,* 350 F.2d 28 (C.A. 10 1965)." 264 F.Supp. at 1023.

*Mann v. United States,* 294 F.Supp. 691 (Tenn.1968), the case the government argues is most closely akin to the instant cases, does appear to reject strict liability in tort, although the published record is not clear. The plaintiff sought to recover for injuries he suffered when the federally owned auto he was driving crashed due to the unsafe condition of the tires. According to plaintiff, the federal employees had

been negligent and the government should be held liable because of its:

". . . failing to take necessary and adequate precautions to prevent mischievous consequences which could be expected to occur from a condition of which such employees knew, or should have known." 294 F.Supp. at 694.

The *Mann* court observed with respect to this second claim:

"This is an abortive effort on the part of the plaintiff to plead liability of the defendant without fault. Such a theory cannot provide the basis of liability on the part of the national sovereign. *Dalehite v. United States* (1953), 346 U.S. 15, 45, 73 S.Ct. 956, 97 L.Ed. 1427, 1445 (headnote 13)." 294 F.Supp. at 694.

Commenting again on this "abortive" attempt at strict liability, the court stated:

"Mr. Mann asserts belatedly that the worn condition of the tires on the defendant's vehicle constituted a nuisance. Mr. Mann's lack of care for his own protection is equally a defense under his nuisance theory, which could rest upon nothing more than negligence on the part of the defendant's employees. See The Law of Torts, Prosser, 2nd ed. (1955), 423–426, ch. 14, S 74. '* * * Negligence and causal relation are prerequisites to recovery under the Federal Tort Claims Act. * * *' *Mahoney v. United States,* D.C.Tenn. (1963), 220 F.Supp. 823, 826[2]. The Federal Tort Claims Act does not provide for strict liability of the federal government for maintaining an inherently dangerous vehicle. Cf. *Dalehite v. United States* (1953), supra, 346 U.S. at 45, 73 S.Ct. at 972, 97 L.Ed. at 1445 (headnote 13)." 294 F.Supp. at 695.

In *Kropp v. Douglas Aircraft Co.,* 329 F.Supp. 447 (N.Y.1971), the wife of a decedent employee of Douglas sought to recover for the death of her husband who was sucked out of a jet when it depressurized while in flight. The jet was owned by the government, and the plaintiff contended that the government should be liable for the negligence of Douglas in training the jet's flight crew. Finding that the United

States did not have sufficient control over the alleged acts of culpability, the *Kropp* court rejected plaintiff's argument, and in *dicta* disapproved of strict liability in tort:

"The mere fact that the Government owns the property being worked on by the contractor is also insufficient control to attach liability to the United States for *negligence* of the contractor. The FTCA contemplates claims based only on the *negligence* of employees or agents of the Government. Claims not specifically grounded in negligence, such as those based on warranty, product liability or absolute liability, are not within the purview of the Act. *United States v. Page, supra,* 350 F.2d at 33." 329 F.Supp. at 470 (emphasis original).

The United States and plaintiffs both contend that *Toppi v. United States,* 332 F.Supp. 513 (Pa.1971) supports their respective positions. Toppi was a chemical company employee who was allegedly injured when the chemicals he was destroying exploded. The chemicals had been purchased by the company from the government, and Toppi contended that the government ought to be held strictly liable in tort for injuries caused by a defect in the chemicals. This theory of liability is sometimes referred to as strict products liability, and is set forth in Section 402A of the Restatement Second on Torts. However, the *Toppi* court found that plaintiff could not recover on a strict products liability theory because he had failed in his proof. After finding that plaintiff could not recover on a breach of warranty claim against the United States because it had not been shown that the chemicals sold had been defective, the court said:

"The same failure to submit evidence by plaintiff requires a denial of recovery under the Restatement (Second) of Torts § 402A (1965). No evidence of any defect in the tetryl was produced during the trial of this case, and a product must be defective for Section 402A to be applicable." 332 F.Supp. at 517.

From this statement, plaintiffs argue that the *Toppi* court would have imposed strict liability on the government had the plaintiff met the applicable burden of proof. However, in view of the following statement in *Toppi,* it is more likely that the *Toppi* court was merely stating that, assuming *arguendo* such liability was possible, the plaintiff had not met his burden of proof:

"In addition, as the defendant correctly points out, the Federal Tort Claims Act only lifts governmental immunity for negligent or wrongful acts committed by the government and not for theories of liability without fault, such as Section 402A, based on absolute liability, extra-hazardous activities, inherently dangerous commodities, products liability, or warranties. *Dalehite et al. v. United States,* 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1954); *United States v. Page,* 350 F.2d 28 (10th Cir. 1965) (see cases cited at p. 33), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966)." 332 F.Supp. at 518.

Some solace is provided plaintiffs by *Winston Brothers Company v. United States,* 371 F.Supp. 130 (Minn.1973). In *Winston,* government contractors sued the United States under the FTCA seeking reimbursement for damage to two drills which resulted from the cave-in of a portion of a tunnel being excavated in connection with a dam. The plaintiff contractors contended that the government breached a warranty by providing "defective specifications" in connection with the tunneling project. After finding that plaintiffs' warranty theory would not suffice under the Tucker Act, the court addressed an issue that may not have been briefed or argued:

"It is possible, however, to construe the warranty allegation here as constituting a claim of strict liability in tort. See Annot., Products Liability—Strict Liability, 13 A.L.R.3d 1057 (1967). Rather than being precluded by the Tucker Act, such a claim could be asserted under the Federal Torts Claims Act." 371 F.Supp. at 133.

Footnoting this passage, the *Winston* court stated:

"Whether the alleged design deficiency involves rendition of services, rather than provision of products, and hence would not be cognizable under strict liability law is a question the Court does not now consider. See *Balkowitsch v. Minneapolis War Memorial Blood Bank, Inc.,* 270 Minn. 151, 132 N.W.2d 805 (1965); *See generally* Annot., Strict Liability-Services, 29 A.L.R.3d 1425 (1970)." 371 F.Supp. at 133 fn. 1.

Thus, while holding out the possibility of strict liability in tort, the *Winston* court found that such an action was barred by the running out of the limitation period. No reasoning or authority was offered by the *Winston* court in support of its implicit holding that strict liability in tort against the government was possible.

There being no compelling authority expressly rejecting or adopting strict products liability, this court must inquire further by closely reviewing the language of the FTCA, the construction of that language by the Supreme Court in *Dalehite* and *Laird,* the structure and legislative history of the FTCA, and other manifestations of Congressional intent in adopting the language of the FTCA.

■ Before defining what place strict products liability has in the FTCA, some definition of that theory must be identified. If products liability is a basis for recovery under the FTCA, a federal court must apply the law of the state where the negligent or wrongful act occurred in order to discover what must be proved to recover on such a theory. *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). In the instant case, it is not clear where the acts giving rise to the claims of strict products liability occurred. However, at oral argument counsel for plaintiffs and the United States stipulated that the applicable state law to be applied would be identical to Section 402A of the Restatement Second on Torts in all significant respects. Section 402A provides:

" § 402A. Special Liability of Seller of Product for Physical Harm to user or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

For purposes of the legal question facing this court, the significant elements of a strict products liability action are the requirement that the product causing the injury be "defective" and the imposition of liability even where "the seller has exercised all possible care."

To determine whether such a theory of liability has any place in the FTCA, the court must first turn to the language of the FTCA set forth at 28 U.S.C. § 1346(b):

"(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused *by the negligent or wrongful act or omission of any employee* of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (emphasis added)

This provision of the FTCA waives the sovereign immunity of the United States from suits brought to recover for damages caused by "the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b). Inasmuch as one may recover under the doctrine of strict products liability without demonstrating that the product was manufactured in a negligent manner or that the failure to warn was negligent, the pertinent words in this case are "wrongful act or omission." If one who manufactures a defective product which causes damages to another is guilty of a "wrongful act or omission", then the United States has, by adopting § 1346(b), waived immunity to suits based on the doctrine of strict products liability. Thus, the court's task here is to determine whether the words "wrongful act or omission" are susceptible to such a construction.

■ It has been suggested by some plaintiffs that this court should define "wrongful act or omission" by reference to state law. However, in *Laird v. Nelms, supra,* the Supreme Court decided otherwise. In *Laird* the court did not look to the law of the place where the allegedly "wrongful act or omission" took place. Rather, the Supreme Court, as noted by Professor Pack— one of the Court's most vociferous critics, looked to see whether Congress intended liability without fault to be covered by the FTCA:

> "Although this statutory language clearly indicates that the predominate purpose of the FTCA is to make state law determinative of what constitutes a 'wrongful' act, the Court substituted a highly technical reading of the statute and assumed that its brand of federal common law controlled." Peck, *Laird v. Nelms: A Call for Review and Revision of the Federal Tort Claims Act,* 48 Wash.L.Rev. 391, 393 (1973). (hereinafter cited as Peck, *Laird v. Nelms*)

The *Laird* court's approach was further explained in a footnote to the above quote:

> "This strained construction only can be derived by interpreting the FTCA to mean that only if an act is 'wrongful' according to federal common law does one examine state law to determine whether the government would also be liable under that body of law. According to this theory, state law is only relevant after an initial determination of governmental liability under federal common law." Peck, *Laird v. Nelms,* at 393 n. 10

This initial application of federal law and subsequent application of state law is succinctly stated at Jayson, *Handling Federal Tort Claims,* § 218.01 at 9–145:

> "The elements of a cause of action are governed by state law, but whether a particular cause of action constitutes a claim that is excluded from the Tort Claims Act is governed by federal law."

See also *Neustadt v. United States,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) and *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Therefore, notwithstanding whatever appeal there may be to applying state law to determine what claims are excluded from the FTCA, this court is bound to apply federal law.

■ Plaintiffs contend that when Congress used the words "negligent or wrongful act or omission" it must have meant to waive more than just its immunity from negligence actions, because otherwise the words "or wrongful act or omission" would be merely superfluous. This same argument was used by the court in *Parcell v. United States,* 104 F.Supp. 110 (W.Va.1951) when it held that Congress must have intended to waive its tort immunity from suits based on a theory of absolute liability for the miscarriage of an ultrahazardous activity; it reasoned that engaging in ultrahazardous activity which results in an injury constituted a "wrongful act" : [1]

> "Although fraud and deceit may constitute tortious conduct, such conduct does not fall within the provisions of the Act. *United States v. Gill,* D.C.W.D.Pa.1957, 156 F.Supp. 955. The courts, by inference, in construing

1. However, the "no superfluous words" rule of construction might be countered by another rule noted in *Woodbury v. United States,* 192 F.Supp. 924 (Oregon 1961):

"The words, 'wrongful act,' in that portion of the statute set out above must be given some meaning. To say that 'wrongful act' is a tautological phrase meaning negligence is inconsistent with the general rule of statutory interpretation, namely, that no portion of a statute susceptible of meaning is to be treated as superfluous. See *Hurley* and *Comi v. United States,* 4 Cir., 192 F.2d 297." 104 F.Supp. at 116.

Plaintiffs in *Dalehite v. United States, supra,* made the identical argument to the Supreme Court in an attempt to have that court reach the conclusion that a "wrongful act" is committed when the conduct of ultrahazardous activity results in an injury. While acknowledging that more than mere negligence might be covered by the FTCA, the *Dalehite* court concluded, as must this court, that the FTCA does not cover tort actions which do not require a showing of "fault" as a prerequisite to recovery:

"Petitioners rely on the word 'wrongful' though as showing that something in addition to negligence is covered. This argument, as we have pointed out, does not override the fact that the Act does require some brand of misfeasance or nonfeasance, and so could not extend to liability without fault . . . ." 346 U.S. at 45, 73 S.Ct. at 972.

The legislative history of the FTCA does indicate that Congress intended to include more than negligence claims within the scope of that act. The FTCA was passed by the Seventy-ninth Congress in 1946 as Title IV of the Legislative Reorganization Act, 60 Stat. 842, "after nearly thirty years of congressional consideration." *Dalehite v. United States, supra,* 346 U.S. at 24, 73 S.Ct. at 962. Its impetus is explained in *Dalehite* :

"It was the offspring of a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work. And the private bill device was notoriously clumsy. Some simplified recovery procedure for the mass of claims was imperative. This Act was Congress' solution, affording instead easy and simple access to the federal courts for torts within its scope. . . ." 346 U.S. at 24–25, 73 S.Ct. at 962.

The long history of the sentiment which led to the adoption of the FTCA is explained in a footnote to the above passage:

"From the Committee hearings we learn that the previous 85 years had 'witnessed a steady encroachment upon the originally unbroken domain of sovereign immunity from legal process for the delicts of its agents. Yet a large and highly important area remains in which no satisfactory remedy has been provided for the wrongs of Government officers or employees, the ordinary "common law" type of tort, such as personal injury or property damage caused by the negligent operation of an automobile'. Hearings before House Committee of Judiciary, 77th Cong. 2d Sess., on HR 5373 and HR 6463, p. 24." 346 U.S. at 25, 73 S.Ct. at 963.

In 1940, six years before the passage of the FTCA, hearings were held before the Subcommittee of the Committee on the Judiciary of the United States Senate on S. No. 2690, a bill intended to waive the immunity of the United States under certain circumstances for damages "caused by the negligence or wrongful act or omission of any officer or employee of the United States. . . ." Section 201 of S. No. 2690. During these hearings, the following exchange took place between Alexander Holtzoff, special assistant to the Attorney General and Senator Danaher:

"SENATOR DANAHER, I agree with you that that could quite possibly happen.

I call your attention to this language on page 2, line 5, 'or wrongful act or omission,' as part of the clause upon

the language 'negligent or wrongful act or omission' have applied the well-known rule of ejusdem generis. Under this rule the general words in a statute (*or wrongful act or omission*) are confined to the class which it has specifically described (*negligent*) and may not be used to enlarge the meaning of such word." 192 F.Supp. at 938. (emphasis original)

which liability may be predicated. It refers to damages to or loss of property, or personal injuries, caused by the negligent—and then follow the words quoted. I can see where the courts might limit the cause of action to tort cases arising solely from negligence, thus eliminating the words I quoted.

MR. HOLTZOFF, Of course, the great majority of the claims that would be cognizable under this proposed law would undoubtedly be covered by the term 'negligent' or 'negligence.' The Government might be saved from some claims that might be difficult to defend, if the words 'wrongful act' are included.

SENATOR DANAHER, 'Or omission.'

MR. HOLTZOFF. 'Omission' would probably be covered by the word 'negligence.' I am more concerned with he words 'wrongful act.' Suppose you have a question of trespass. If you leave out the words 'wrongful act,' it might be held that trespass was omitted from the bill.

SENATOR DANAHER, Various types of what might be called 'wrongful act' are enumerated in subsection 9 of section 303.

MR. HOLTZOFF, Some types of 'wrongful acts' and 'trespass' are not enumerated, you will observe.

SENATOR DANAHER. In the case of an officer who, without a search warrant, thinks he has probable cause to believe the law is violated and invades somebody's house, it might give rise to a tort claim, if the court should find there was no wrongful act and turned him loose. Is that not right?

MR. HOLTZOFF. Yes. Personally, I do not feel very strongly on the subject, because I think the word 'negligent' or 'negligence' will cover the situation. I am sure that would cover the bulk of the claims that would be cognizable under legislation such as is here under consideration." Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 2690, 76th Cong., 3d Sess. 43–44.

Mr. Holtzoff's representation, that Section 303 of the bill (which excluded assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, and interference with contract rights from coverage) did not enumerate some types of "wrongful acts" and "trespass", indicates that the Attorney General's office at that time viewed "wrongful acts" as including more than just negligence and trespass. And Mr. Holtzoff's statement that a trespass might not be covered if the words "wrongful act" were excluded indicates that "wrongful act" would at least include the tort of trespass into the FTCA. Responding to plaintiffs' contention that the words "wrongful act or omission" must mean something more than just negligence, the Supreme Court in *Dalehite v. United States, supra,* 346 U.S. at 45, 73 S.Ct. 956, 972–73 noted the Holtzoff-Danaher exchange, while referring to the word "wrongful":

> "[T]he legislative history of the word indicates clearly that it was not added to the jurisdictional grant with any overtones of the absolute liability theory. Rather, Committee discussion indicates that it had a much narrower inspiration: 'trespasses' which might not be considered strictly negligent. Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 2690, 76th Cong., 3d Sess. 43–44."

This interpretation of the Holtzoff-Danaher exchange in 1940 was questioned by the dissenting opinion of Justice Stewart in *Laird v. Nelms, supra,* 406 U.S. at 806 n. 3, 92 S.Ct. at 1904:

> "3. The Court's opinion refers to language in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, which in turn relied on a fragment of legislative history, for the proposition that the words 'wrongful act' as used in § 1346(b) refer only to trespasses. The legislative history cited by the Court in *Dalehite,* consisting of a statement by a Special Assistant to the Attorney General at a committee hearing, merely suggested trespass as one example of the kinds of conduct that would not be embraced by

the word 'negligence' but which the Act was intended to reach."

This court finds that Holtzoff's statement that "[s]ome types of 'wrongful acts' and 'trespass' are not enumerated" does indicate that a trespass is only illustrative of the types of non-negligent torts, other than those enumerated, which were believed to be encompassed by the FTCA.

Justice Stewart in his *Laird v. Nelms* dissent noted additional legislative history which points to the conclusion that the words "wrongful act" were intended to include non-negligent torts within the coverage of the FTCA:

> "4. A bill passed by the Senate in 1942 covered only actions based on the 'negligence' of Government employees. § 2221, 77th Cong., 2d Sess. The House Committee substituted the phrase 'negligent or wrongful act or omission,' saying that the 'committee prefers its language as it would afford relief for certain acts or omissions which may be wrongful but not necessarily negligent.' HR Rep. No. 2245, 77th Cong., 2d Sess. 11. The language used by the House committee was carried over into the bill finally enacted in 1946, without further mention in the committee reports of the intended scope of the words 'wrongful act.'" 406 U.S. at 806 fn. 4, 92 S.Ct. at 1904.

When faced with the question, the judiciary has generally ruled that the word "wrongful" was intended to include more than just negligent acts. Courts have found trespass,[2] conversion,[3] waste,[4] and duress[5] to be wrongful acts within the meaning of the FTCA. In view of these decisions and the legislative history reviewed above, this court is persuaded that Congress intended to include more than negligence and trespass in the word "wrongful". This, however, does not end the inquiry. It must still be decided whether Congress, by using the word "wrongful", intended to include strict products liability within the coverage of the FTCA.

Plaintiffs contend that Congress must have intended such coverage since the legislative history indicates that the FTCA was designed to waive all governmental tort immunity except that withheld expressly by the Act. This contention is borne out by a description of the FTCA given by the legislative committee that recommended passage of the FTCA in 1946:

> "The present bill would establish a uniform system . . . permitting suit to be brought on any tort claim . . . with the exception of certain classes of torts expressly exempted from the operation of the act." H.R.Rep. No. 1287, 79th Cong., 1st Sess. 3; S.Rep. No. 1400, 79th Cong., 2d Sess. 31.

It is significant that the express exemptions in the FTCA, now set forth at 28 U.S.C. § 2680,[6] do not include the torts of absolute

---

2. *Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1955); *Simons v. United States*, 413 F.2d 531 (5th Cir. 1969); *Robin Construction Co. v. United States*, 345 F.2d 610 (3rd Cir. 1965); *Ira S. Bushey & Sons v. United States*, 276 F.Supp. 518 (N.Y.1967), aff'd on other grounds, 398 F.2d 167 (2nd Cir. 1968); *United States v. Gaidys*, 194 F.2d 762 (10th Cir. 1952); *Lemaire v. United States*, 76 F.Supp. 498 (Mass.1948).

3. *Alliance Assurance Co. v. United States*, 252 F.2d 529 (2nd Cir. 1958); *Aleutco Corp. v. United States*, 244 F.2d 674 (3rd Cir. 1957). But see *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963).

4. *Merritt v. United States*, 332 F.2d 397 (1st Cir. 1964).

5. *United States v. Ein Chemical Corp.*, 161 F.Supp. 238 (N.Y.1958).

6. Section 2680 provides:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

(b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

liability for the miscarriage of an ultrahazardous activity, strict liability in tort, conversion and waste. Liability for trespass, conversion, and waste have been found under the FTCA, as noted above, and such findings of liability support the position taken by the plaintiffs that all tort liability except that exempted is covered. However, this position has been undercut by the *Dalehite* and *Laird* rulings that one may not recover against the United States under the FTCA on the well-recognized tort theory of absolute liability for the miscarriage of an ultrahazardous activity. This holding constituted a rejection of the plaintiffs' argument. This rejection is attested to by Justice Stewart's dissent in *Laird v. Nelms,* in which the Justice argued that ultrahazardous activity liability should be covered by the FTCA because that tort was not exempted:

> "As I read the Act and the legislative history, the phrase 'negligent or wrongful act or omission' was intended to include the entire range of conduct classified as tortious under state law. The only intended exceptions to this sweeping waiver of governmental immunity were those expressly set forth and now collected in § 2680." 406 U.S. at 805–806, 92 S.Ct. at 1904.

If the United States waived its immunity from liability to all torts, save those excepted by § 2680, the Supreme Court would have found that the government was subject to suit on an ultrahazardous activity theory and Justice Stewart, in making his remarks, would have stood with the majority.

Even if one were to accept the proposition that Congress waived its tort immunity to all common law torts, save those excepted by § 2680 and the doctrine of ultrahazardous activity absolute liability, the government argues that Congress only intended to waive its immunity with respect to torts which were recognized in 1946 when the FTCA was adopted and that Congress did not, therefore, intend to waive its immunity to torts subsequently devised by the judiciary. In arguing that Congress did not intend to write a blank check for the state courts, the government begins with the proposition that the FTCA is to be strictly construed.

■ It cannot be questioned that the FTCA, as a waiver of sovereign immunity, is to be construed strictly. *United States v. Sherwood,* 312 U.S. 584 (1941); *Mann v. United States,* 399 F.2d 672 (9th Cir. 1968); *Claremont Aircraft, Inc. v. United States,* 420 F.2d 896 (9th Cir. 1969); *Bat Rentals, Inc. v. United States,* 479 F.2d 43 (9th Cir. 1973). At the same time, the court must be mindful of the following:

> "Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." *Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955).

(d) Any claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States.

(e) Any claim arising out of an act or omission of any employee of the Government in administering the provisions of sections 1–31 of Title 50, Appendix.

(f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

(g) Repealed.

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

(i) Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system.

(j) Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.

(k) Any claim arising in a foreign country.

(*l*) Any claim arising from the activities of the Tennessee Valley Authority.

(m) Any claim arising from the activities of the Panama Canal Company.

(n) Any claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives."

A review of the origin of the doctrine of strict liability in tort, now set forth as § 402A of the Restatement Second on Torts, compels the conclusion that the doctrine of strict liability *in tort* was not a recognized *tort* doctrine in 1946 when the FTCA was adopted. See Prosser, *The Law of Torts* pp. 653–658 (4th ed. 1972). Professor Prosser traces the doctrine of strict products liability to the recognition of an implied *warranty* that food sold to the public would not be defective, and he cites the case of *Mazetti v. Armour & Co.,* 75 Wash. 622, 135 P. 633 (1913) as the first case to recognize an implied warranty in a food case. Prosser, *supra* at 653. From 1927 to 1963, which includes the period during which FTCA was drafted, considered and adopted, "all of the decisions imposing the strict liability without privity of contract talked the language of warranty."[7] Prosser, *supra,* at 654. And the "real break" in applying the strict liability by implied warranty doctrine to areas other than food and drink came in 1958 with the case of *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 90 N.W.2d 873 (1958) in which the court found an implied warranty, without privity, with respect to cinder building blocks. Prosser, *supra* at 654. The extension of the implied warranty form of strict liability to products other than food and drink accelerated after the Supreme Court of New Jersey in *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960), held that the implied warranty doctrine of the food cases applied to the manufacture and sale of automobiles. Prosser, *supra* at 654. The substitution of strict products liability *in tort* for strict products liability based on *warranty* was presaged by Professor Prosser's 1960 article,[8] was thereafter advocated by the American Law Institute by adopting § 402A prior to any case law supporting that restate-

ment, and was first accepted by a state court in 1963 when the Supreme Court of California decided *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). Prosser, *supra* at 656–657. Thus, plaintiffs in the instant case must argue that Congress in 1946 intended to waive its immunity to a tort which was not recognized by any court until seventeen years later.

Plaintiffs argue that such a prospective waiver should not seem incredible because the FTCA was intended to create unprecedented liability for torts on the part of the government. In support, the plaintiffs quote the following passage from *Rayonier Incorporated v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957), in which the Supreme Court ruled that the government could be held liable for negligent firefighting by its employees even though governmental bodies have not traditionally been held liable for such negligence:

"It may be that it is 'novel and unprecedented' to hold the United States accountable for the negligence of its firefighters, but the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability." 352 U.S. at 319, 77 S.Ct. at 377.

However, in declaring that Congress intended to subject the United States to what may be described as "novel and unprecedented" liability, the Supreme Court did not intend thereby to expose the public treasury to every new tort theory. Rather, the court merely held that with respect to negligence actions, which are expressly provided for in the FTCA, the liability of the United States must be governed by the equivalent liability of private persons under

---

**7.** The characterization of such actions as "warranty" as opposed to "tort" actions is significant because the exclusive remedy for contract actions against the government is under the Tucker Act, 28 U.S.C. § 1346(a). See *Woodbury v. United States,* 313 F.2d 291 (9th Cir. 1963). See also 1 Jason, *Handling Federal Tort Claims* § 212.03[1] at 9–13 to 9–19. Congress

would not have provided an exception to the FTCA waiver of immunity for an action which would properly have been brought under the Tucker Act.

**8.** Prosser, *The Assault Upon the Citadel,* 69 Yale L.J. 1099 (1960).

the applicable state law and that the government would not benefit from the traditional exceptions carved out to protect municipal corporations from bankruptcy. *Rayonier* did not even involve subjecting the government to liability under a new refinement in the law of negligence, much less a completely new theory of tort liability; it only followed the command of § 1346(b) that liability be imposed on the government for damages caused by the negligent or wrongful acts of government employees "if a private person" would be liable to the claimant.

 The structure of the FTCA indicates that Congress did not intend to waive the immunity of the United States to tort claims based on theories not recognized at the time the FTCA was passed. As is noted above, Congress waived the immunity of the United States to suit based on negligent or wrongful acts of government employees but reserved the immunity of the United States with respect to specified torts and torts which do not require a showing of fault. By so structuring the waiver and reservation of immunity, Congress manifested its intent to release the government's immunity from a particular type of tort claim only after considering the impact that liability for such a claim might have on the performance of governmental functions and the public treasury. This sort of Congressional deliberation over the scope of the waiver of government immunity is inconsistent with the notion that Congress intended to waive its immunity with respect to tort claims based on theories developed by state courts after the adoption of the FTCA. Congress cannot deliberate over the merits of waiving the immunity of the United States to a tort claim not recognized at the time the deliberation is to take place. Therefore, this court cannot find that Congress intended to waive the immunity of

the government to tort claims based on a theory of strict products liability.

The court is not moved from this conclusion by the language employed in the FTCA. The waiver of immunity with respect to "wrongful acts" is broad enough to constitute a waiver of immunity with respect to all torts. "Wrongful act" is defined in Black's Law Dictionary at 1788 (4th ed. 1951) as:

"Any act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right."

Certainly, the production of a product with a defect which causes an injury to another constitutes an "act which in the ordinary course of events [will] infringes upon the rights of another to his damage. . . . ."[9] However, while the language employed would seem broad enough to encompass strict products liability claims, it would also seem broad enough to include claims based on the miscarriage of an ultrahazardous activity and yet the Supreme Court in *Dalehite* found that ultrahazardous activity claims were not so included. Therefore, it is not enough that the words "wrongful acts" are broad enough to include strict products liability if *Dalehite* would preclude strict liability for other reasons.

 *Dalehite v. United States, supra,* arose out of the explosion in the holds of two ships of ammonium nitrate fertilizer, manufactured for the government. The explosion killed hundreds, injured thousands, and leveled the thriving port of Texas City where the ships had been docked. As a result, three hundred claims were filed and consolidated for trial, with aggregate damages of about two hundred million dollars. The district court found that the explosion

9. See also *Parcell v. United States, supra,* a pre-*Dalehite* case which found that "wrongful act" included the conduct of engaging in an ultrahazardous activity. In that case, the court used the definition suggested in Words and Phrases:

"In 45 Words and Phrases, p. 627, many cases are cited in which the phrase 'wrongful

act' has been interpreted to mean any act which in the ordinary course of events infringes on the rights of another to his damage." 104 F.Supp. at 116.

Of course, the Supreme Court in *Dalehite* and *Laird* found that the words "wrongful act" did not encompass claims based on the miscarriage of an ultrahazardous activity.

was due to the government's negligence and held the government liable on this basis. The district court further found that the government's activity was so dangerous that it should be held liable on what is now called an "ultrahazardous activity" theory. On writ of certiorari, the Supreme Court found that the government could not be held liable on the negligence theory because the acts fell within the discretionary function immunity exception to liability set forth at 28 U.S.C. § 2680(a).[10] After finding the discretionary function immunity to apply, the Court noted the remaining issue:

"Though the findings of specific and general negligence do not support a judgment of government liability, there is yet to be disposed of some slight residue of theory of absolute liability without fault." 346 U.S. at 44, 73 S.Ct. at 972.

Addressing that issue, the Court stated in part:

"It [the FTCA] is to be invoked only on a 'negligent or wrongful act or omission' of an employee. Absolute liability, of course, arises irrespective of how the tortfeasor conducts himself; it is imposed automatically when any damages are sustained as a result of the decision to engage in the dangerous activity. The degree of care used in performing the activity is irrelevant to the application of that doctrine. But the statute requires a negligent act. So it is our judgment that liability does not arise by virtue either of United States ownership of an 'inherently dangerous commodity' or property, or of engaging in an 'extra-hazardous' activity. *United States v. Hull* (C.A.1st.Mass.) 195 F.2d 64, 67." 346 U.S. at 44–45, 73 S.Ct. at 972.

In response to the plaintiffs' contention that the use of the word "wrongful" imported liability for claims other than just negligence claims, the *Dalehite* court observed:

"This argument, as we have pointed out, does not override the fact that *the Act does require some brand of misfeasance or nonfeasance, and so could not extend to liability without fault*; in addition, the legislative history of the word indicates clearly that it was not added to the jurisdictional grant with any overtones of the absolute liability theory. Rather, Committee discussion indicates that it had a much narrower inspiration: 'trespasses' which might not be considered strictly negligent. Hearings before a Subcommittee of the Senate Committee on the Judiciary on S 2690, 76th Cong., 3d Sess. 43–44." 346 U.S. at 45, 73 S.Ct. at 972–73. (emphasis added)

Thus, the *Dalehite* court ruled that the district court has no jurisdiction to rule on the plaintiffs' ultrahazardous activity claims because only negligence and trespass claims were within the jurisdictional grant, only claims involving "some brand of misfeasance or nonfeasance" fall within that grant, and because ultrahazardous activity claims involve the imposition of liability "irrespective of how the tortfeasor conducts himself" and "as a result of the decision to engage in the dangerous activity." 346 U.S. at 45, 73 S.Ct. at 972.

The *Dalehite* decision on absolute liability for the miscarriage of an ultrahazardous activity has been generally accepted by the lower courts, including the Ninth Circuit,[11] although one Fourth Circuit decision attempted to distinguish *Dalehite* [see *United States v. Praylou*, 208 F.2d 291 (4th Cir. 1953)]. Despite the adherence by the lower courts, the Supreme Court's decision was much criticized, as noted by Professor Prosser:

"It added a construction of the statutory language, 'wrongful act or omission,' to mean that the government was not liable unless it was chargeable with some mis-

---

10. Generally, a discretionary function immunity exists when the alleged acts of negligence resulted from decisions made at the planning as opposed to the operational level. *Friday v. United States*, 239 F.2d 701 (9th Cir. 1957).

11. See *United States v. Ure*, 225 F.2d 709 (9th Cir. 1955) (no absolute liability under *Rylands v. Fletcher* doctrine) and *Bartholomae Corp. v. United States*, 253 F.2d 716 (9th Cir. 1957) (no absolute liability arising from government nuclear explosion).

feasance or nonfeasance, or in other words, unless it had been at fault, so that there was no strict liability, without intent to do harm or negligence, for such abnormally dangerous activities as the shipment of large quantities of explosives. The Court said briefly that 'the statute requires a negligent act,' and that the word wrongful 'was not added to the jurisdictional grant with any overtones of the absolute liability theory.' While this has been very vigorously denounced on the quite reasonable basis that the tortious abnormal conduct which leads to strict liability is no less 'wrongful,' the position has been reiterated, and the lower federal courts for the most part have accepted it as conclusive." Prosser, The Law of Torts, at p. 974 (4th ed. 1971).

Two years after *Dalehite*, the Supreme Court decided *Indian Towing Co. v. United States, supra*, in which the Court seemingly rejected the *Dalehite* ruling that the United States was immune from liability where the activity involved was "governmental". While *Indian Towing Co.* did not address the question of absolute liability, its more liberal approach to construing the FTCA, together with the Supreme Court's approving citation of *United States v. Praylou, supra*, in *Rayonier Incorporated v. United States, supra*, 352 U.S. at 319 n. 2, 77 S.Ct. 374, 1 L.Ed.2d 354, led some to believe that the Supreme Court had abandoned its absolute liability ruling in *Dalehite*. See *Laird v. Nelms, supra*, 406 U.S. at 808, 92 S.Ct. 1899 (Justice Stewart, dissenting); Peck, *Absolute Liability and the Federal Tort Claims Act*, 9 Stan.L.Rev. 433 (1957). This possible abandonment was noted by Professor Prosser in 1971:

"There may perhaps remain some lingering shadow of doubt, in view of the fact that such cases all have involved decisions at the planning level, and there is some scant case law to the effect that there may be strict liability for conduct which is 'operational;' but in all probability further legislation will be required before strict liability is imposed upon the United States." Prosser, *supra*, at 974–975.

In 1972, however, even the "lingering shadow of doubt" vanished with the Supreme Court's decision in *Laird v. Nelms, supra.*

In *Laird*, the plaintiffs sought recovery under the FTCA for damages to their house allegedly resulting from a sonic boom caused by military planes on a training mission. The district court entered judgment for the government on all counts, but the Fourth Circuit on appeal held that although the plaintiff was unable to show negligence, the government could be held liable under the doctrine of strict liability for the miscarriage of an ultrahazardous activity. On writ of certiorari, the Supreme Court reversed. The plaintiffs argued, *inter alia*, that since the government's immunity to trespass actions had been waived, the Court should deem the government's immunity to ultrahazardous activity claims waived because early cases had treated such claims as trespass claims. This argument was rejected by the Court because it found that recent ultrahazardous activity theories had abandoned any reference to "trespass", that airplanes flying over property do not "trespass" upon the property under prevailing federal case law, and that Congress never considered the possibility that government immunity from "absolute liability" immunity might have been waived by waiving immunity from trespass claims. With regard to this last consideration, the Court stated:

"More importantly, however, Congress in considering the Federal Tort Claims Act cannot realistically be said to have dealt in terms of either the jurisprudential distinctions peculiar to the forms of action at common law or the metaphysical subtleties that crop up in even contemporary discussions of tort theory. See Prosser, *supra*, at 492–496. *The legislative history discussed in Dalehite indicates that Congress intended to permit liability essentially based on the intentionally wrongful or careless conduct of Government employees*, for which the Government was to be made liable according to state law under the doctrine of respondeat superior, but to exclude liability based solely on the ultrahazardous nature of an activity

undertaken by the Government." 406 U.S. at 800–801, 92 S.Ct. at 1901–02. (emphasis added)

Plaintiffs in *Laird* also argued that *Dalehite* should be distinguished as applying only to ultrahazardous activity claims involving the handling of dangerous property, as opposed to claims involving the operation of dangerous instruments—but the Court refused to accept this distinction:

"Dalehite did not depend on the factual question of whether the Government was handling dangerous property, as opposed to operating a dangerous instrument but, rather, on the Court's determination that *the Act did not authorize the imposition of strict liability of any sort upon the Government.*" 406 U.S. at 803, 92 S.Ct. at 1902 (emphasis added).

This reading of *Dalehite* comports with the statement in *Dalehite* that "some brand of misfeasance or nonfeasance" was required so that the FTCA "could not extend to liability without fault . . . ." 346 U.S. at 45, 73 S.Ct. at 972. Inasmuch as the *Laird* court stated that *stare decisis* required it to reject plaintiffs' ultrahazardous activity theory, *Laird* must be viewed as a reaffirmation of the principal of *Dalehite* that there could be no liability "without fault."[12]

▮ The importance of the language in *Laird* limiting FTCA actions to claims "based on the intentionally wrongful or careless conduct of Government employees . . . ." (406 U.S. at 801, 92 S.Ct. at 1901) and rejecting "strict liability of any sort" (406 U.S. at 803, 92 S.Ct. 1899) is expressed by Professor Peck, the Court's constant critic in this area:

"In addition, the majority's suggested limitation of liability to 'intentionally wrongful or careless conduct' reduces the remedies available to those who have been injured by tortious Government activities. There are many torts for which liability cannot be characterized as involving 'intentionally wrongful or careless conduct.' For example, there is a well-established strict liability for subsidence of land caused by removal of lateral or subjacent support, for damage done by trespassing cattle, for conversion of property purchased *bona fides*, for misdelivery of a bailed chattel, *for sale of a defective product in the course of business, and for renting defective equipment.*" (emphasis added)

Peck, *Laird v. Nelms, supra* at 406. This court would add to Professor Peck's list the design, assembly, manufacture, and use of a defective chattel. As is indicated by § 402A of the Restatement Second on Torts, strict products liability is imposed even where the defendant "has exercised all possible care." Plaintiffs argue that even though this is true, strict products liability does not impose liability without fault since there is "social" fault on the part of the government when it manufactures a defective product.[13] While "social" fault might exist when a defective product is manufactured, this court finds that this is not the "fault" of which the Supreme Court spoke in *Dalehite*. The reference in *Dalehite* to no liability without a showing of "fault" must be read together with the statement in *Laird* that "Congress intended to permit liability essentially based on the intentionally wrongful or careless conduct of Government employees . . . ." 406 U.S. at 801, 92 S.Ct. at 1901. Inasmuch as plaintiffs' theory of "social" fault requires the imposition of liability even where the

---

**12.** Plaintiffs would have this court read *Dalehite* and *Laird* narrowly so that liability without fault would only be required where the activity giving rise to the claim occurs at the planning, as opposed to the operational level—where the defense of discretionary function would be a bar to the action. Such a grudging reading of these cases will not wash. If this were the law, the Court would have disposed of the absolute liability claims in *Dalehite* and *Laird* by applying the law relating to discretionary function immunity since activity at the planning level is protected by that immunity. The Court did not take the approach attributed to it by plaintiffs. Rather, the Court treated the question of absolute liability separately from the question of the discretionary function immunity.

**13.** See Fleming, *Foreword: Comparative Negligence At Last—By Judicial Choice*, 64 Cal.L. Rev. 239, 270 (1976).

government's employees have exercised "all due care", whereas "fault" exists under *Laird* where there has been intentionally wrongful or careless conduct, the court finds that the plaintiffs' notion of "social" fault does not satisfy the requirement that FTCA liability be premised on a showing of "fault".

Finally, the court is also persuaded that the failure of Congress to take steps to waive the immunity of the United States to strict products liability claims and ultrahazardous activity absolute liability claims, after the Supreme Court in *Dalehite* and *Laird* have broadly rejected all liability without fault, indicates that Congress did not intend to waive the immunity of the United States to such claims. This method of construction by Congressional inaction, while disfavored by some,[14] was used by the Supreme Court in *Laird* to support its construction of the FTCA:

> "Shortly after the decision of this Court in *Dalehite*, the facts of the Texas City catastrophe were presented to Congress in an effort to obtain legislative relief from that body. Congress after conducting hearings and receiving reports, ultimately enacted a bill granting compensation to the victims in question. [citations omitted] At no time during these hearings was there any effort made to modify this Court's construction of the Tort Claims Act in *Dalehite*. Both by reason of stare decisis and by reason of Congress' failure to make any statutory change upon again reviewing the subject, we regard the principle enunciated in *Dalehite* as controlling here." 406 U.S. at 802, 92 S.Ct. at 1902.

Although the implication to be drawn from Congressional inaction must depend on the reading given to the Supreme Court decisions, in view of the expansive language used by the Court in *Laird* in rejecting "strict liability of any sort" (406 U.S. at 803, 92 S.Ct. 1899), this court finds that Congress, by enacting the FTCA, did not intend to relinquish the immunity of the United States in tort actions based on strict products liability.

IT IS THEREFORE ORDERED that the motions of the United States to dismiss the plaintiffs' absolute and strict liability claims, pursuant to F.R.C.P. 12(b)(1), in the above referenced cases, are GRANTED.

14. See Peck, *Laird v. Nelms, supra* at 402–403.